HOOPER TELEPHONE COMPANY, APPELLEE, V. NEBRASKA
TELEPHONE COMPANY, APPELLANT.

FILED MAY 15, 1914.   No. 18,340.

1. **Constitutional Law:** AMENDMENTS TO CONSTITUTION: CONSTRUCTION:
RAILWAY COMMISSION: POWERS. The constitution as amended must
be construed as a whole, and the purpose and scope of amendments
are not limited by former provisions only as the plain meaning of
the whole instrument requires. The amendment creating the state
railway commission and the statute enacted pursuant to the power
given to the legislature thereby confer administrative and judicial
powers upon the commission in addition to the main purpose of its
creation, which is the exercise of legislative powers.

2. **Courts:** SUPREME COURT: JURISDICTION: DECISIONS OF RAILWAY COM-
MISSION: REVIEW. Chapter 94, laws 1911, providing for proceedings
in this court to review the decisions of the state railway commission,
confers appellate jurisdiction upon this court, within the meaning of
section 2, art. VI of the constitution.

3. **Constitutional Law:** RAILWAY COMMISSION: REVIEW OF DECISIONS. The
statute is not unconstitutional as an attempt to confer legislative pow-
ers upon this court, its purpose being to afford a speedy determina-
tion as to the regularity of the proceedings of the commission and
the legality of its decisions. It should not be construed as giving this
court any different jurisdiction than in ordinary civil cases under
the former statute by proceedings in error, which also gave this court
jurisdiction ''to reverse, vacate or modify'' judgments, and not to
retry the case as an original action.

4. ———: DUE PROCESS OF LAW: TELEPHONE COMPANIES. Chapter 79,
laws 1913, is not unconstitutional as taking private property without
due process of law.

5. **State Railway Commission:** JURISDICTION: TELEPHONE COMPANIES.
The state railway commission has jurisdiction under that act to order
physical connection of telephone lines and exchanges, and, when the
parties fail to agree, it is the duty of the commission to determine
and prescribe the terms and conditions of such connection and of the
use of the lines so connected, and apportion the expense of connecting
the same.

6. ———: ORDERS: REVIEW. The orders of the commission are presumed
to be within the power given by the constitution and statutes, and
will not be reversed by this court upon appeal, unless it appears affirm-
atively from the evidence in the record that there was error in the

proceedings prejudicial to the party complaining, or that the commission has otherwise exceeded its powers.

7. ——: ——: ——: FINAL ORDER. When appeal from the order of the commission is taken directly to this court, and the proper bond given, such order becomes the final order of the commission, when approved by this court. The remedies recognized by subdivision *e*, sec. 5, ch. 90, laws 1907, are not superseded by such order of the commission.

8. ——: ——: TELEPHONE CONNECTIONS. The evidence in the record is not sufficient to show that the order of the commission is impracticable or incapable of execution, or that the commission has proceeded illegally, or has exceeded its powers in this case.

APPEAL from the State Railway Commission. *Affirmed.*

*Edgar M. Morsman, Jr.,* for appellant.

*Grant G. Martin, Attorney General, George W. Ayres, Frank E. Edgerton* and *Courtright & Sidner,* contra.

*Byron Clark, Jesse L. Root* and *Holmes & De Lacy, amici curiæ.*

SEDGWICK, J.

The complainant, Hooper Telephone Company, filed its complaint with the state railway commission, alleging that it is, and for several years past has been, operating a public telephone station and exchange at Hooper, in Dodge county, and that the defendant, Nebraska Telephone Company, is, and for many years last past has been, "operating public telephone stations and exchanges and various telephone toll lines throughout the state of Nebraska, one of such exchanges being at Fremont, Nebraska, which exchange has more than two thousand subscribing telephones connected therewith;" that the Fremont Telephone Company had for several years been doing a similar business in Dodge county, and that company and complainant had owned and maintained a county line jointly, and that the Nebraska Telephone Company had purchased the stock of the Fremont company, and asked the railway commission to order the defendant to connect its switchboard and exchange with the complainant's lines. The railway commis-

sion heard the evidence, and ordered the connection made substantially as asked by the complainant, and the defendant, Nebraska Telephone Company, has appealed to this court.

1. The complainant filed a motion to dismiss the appeal on the ground that this court has no jurisdiction thereof, and this presents the first question to be determined.

Sections 1, 2, art. VI of the constitution, are as follows:

Section 1. "The judicial power of this state shall be vested in a supreme court, district courts, county courts, justices of the peace, police magistrates, and in such other courts, inferior to the district courts as may be created by law for cities and incorporated towns."

Section 2. "The supreme court shall consist of seven (7) judges; and a majority of all the elected and qualified judges shall be necessary to constitute a quorum or pronounce a decision. The supreme court shall have jurisdiction in all cases relating to the revenue, civil cases in which the state is a party, mandamus, quo warranto, habeas corpus, and such appellate jurisdiction as may be provided by law."

In 1906 an amendment to the constitution was adopted providing for a state railway commission. Since the revision of the statutes in 1913, this amendment appears as section 19a, art. V of the constitution, and is as follows: "There shall be a state railway commission, consisting of three members, who shall be first elected at the general election in 1906, whose terms of office, except those chosen at the first election under this provision, shall be six years, and whose compensation shall be fixed by the legislature. Of the three commissioners first elected, the one receiving the highest number of votes, shall hold his office for six years, the next highest four years, and the lowest two years. The powers and duties of such commission shall include the regulation of rates, service and general control of common carriers as the legislature may provide by law. But, in the absence of specific legislation, the

commission shall exercise the powers and perform the duties enumerated in this provision."

The legislature of 1907 enacted a general comprehensive statute entitled "An act, creating and defining the powers, duties and qualifications of the state railway commission and the secretary thereof and fixing their compensation; defining railway companies and common carriers, regulating the same, and providing the method of fixing, establishing, publishing rates, charges and classifications for the transportation of passengers, freights and cars, including joint through rates and joint traffic arrangements, over and upon the various lines of said railway companies and common carriers in this state; to provide for a system of annual reports by common carriers; the method of making, establishing and enforcing the general orders of said commission; defining unjust discriminations; to provide penalties for the violation of the provisions of this act, and to repeal all acts or parts of acts in conflict herewith, and to declare that an emergency exists." Laws 1907, ch. 90.

Section 2 of the act provides for the organization and the powers and duties of the commission. Subdivision b of that section is: "Said commission shall have the power to regulate the rates and services of, and to exercise a general control over all railroads, express companies, car companies, sleeping car companies, freight and freight line companies, and all other common carriers engaged in the transportation of freight or passengers within the state." The commission also is required, by subdivision c, to "investigate any and all cases of alleged neglect or violations of the laws of the state by any railway company, or common carrier." Subdivision d of this section provides: "Said commission shall have the power, and it shall be its duty to make all necessary classifications and to fix all necessary rates, charges and regulations to govern and regulate the freight and passenger tariffs of railway companies and common carriers, the power to correct abuses and prevent unjust discriminations, extortions and overcharges in rates of freight and passenger tariffs on the different

railroads in this state, and to enforce the same by having the penalties inflicted as hereinafter provided, through proper courts having jurisdiction." The commission was given power, by subdivision *j*, "to administer all oaths, certify to all official acts, to compel the attendance of witnesses, to examine any of the books, papers, documents and records of any railway company or common carrier subject to the provisions of this act, or have such examination made by any person or persons that they may employ for that purpose, to compel the production of such books, papers, documents and records, or to examine under oath, or otherwise, any officer, director, agent, or employee of any railway company or common carrier subject to the provisions of this act or any other person."

Subdivision *e*, sec. 5, provides: "No railway company or common carrier applying in any court for any temporary writ of injunction or other mandatory order, with reference to any or all of said rates so complained of, shall be entitled to any injunction or mandatory order unless it show to the court that there has been a hearing before said commission with reference to said rate or rates, within the time fixed by said commission for said rate or rates to go into force and effect, and shall attach to said application for said temporary writ of injunction or other mandatory order, and make the same a part thereof, a transcript of the record of said commission upon said hearing with reference to the rate or rates complained of, which said transcript shall contain a copy of the complaint filed with said commission, their decision and findings of fact with reference thereto, and all the evidence introduced at said hearing, which transcript shall be considered by the court in allowing or disallowing said temporary writ of injunction or other mandatory order."

Section 7 provides for appeals from the decisions of the commission as follows: "If any railway company, common carrier, or any person or persons affected thereby, shall be dissatisfied with the decision of said railway commission, affirming, revising, annulling or modifying any rate or rates complained of in said original schedule, or

any subsequent schedule which may be the subject of investigation, or with the decision of said commission with reference to any rate classification, rule, charge, order, act or regulation made or adopted by them, upon which there has been a hearing before said commission, except as otherwise expressly provided for herein, such dissatisfied railway company, common carrier, person or persons, may file a petition, setting forth the particular cause or causes of objection to such decision, act, rate, rule, charge, classification, or order, or to either or all of them, in the district court of the county where the cause of action arose in this state, sitting as a court of equity, against said commission as defendant. Said action shall have precedence over all other causes on the docket of a different nature, criminal cases excepted, and shall be tried and determined as other civil causes in said court. Either party in said action may appeal to the supreme court of this state, and said appeal shall be at once returnable to said court, and said action so appealed shall have precedence in said court of all causes of a different character pending therein; provided that if the district court be in session at the time such right of action accrues, the suit may be filed during the term and stand ready for trial after ten days notice." Section 11 provides for enforcing the decision of the commission: "Whenever any railway company or common carrier shall violate or refuse or neglect to obey any order or orders of said commission which have been finally established, the commissioner, or any company or person interested in such orders, may apply in a summary way, by petition, to the district court of the county in which the violation or disobedience of such order or orders shall happen, alleging such violation or disobedience, as the case may be; and the said court shall have power to hear and determine the matter, on such notice to the railway company or common carrier complained of, as the court shall deem reasonable; and such notice may be served on such railway company or common carrier, its officer, agents, or servants, as the court shall direct; and said court shall proceed to hear and determine the matter

speedily as a court of equity, and without the formal pleadings and proceedings applicable to ordinary suits in equity, but in such manner as to do justice in the premises; and to this end, such court shall have power, if it deem proper, to direct and prosecute in such manner and by such persons as it may appoint, all such inquiries as the court may think needful to enable it to form a just judgment in the matter of such petition; and if it be made to appear to such court on such hearing, or on the report of any such person or persons, that the order or orders of the commission drawn in question has been violated or disobeyed, it shall be lawful for such court to issue a writ of injunction, or other proper process, mandatory or otherwise, to restrain such railway company or common carrier, and its owner, directors, officers, agents, employees, lessees, trustees, or receivers or representatives, upon whom the duty may devolve or through whose agency said order or orders are to be carried out, from further continuing such violation or disobedience of said order or orders, and enjoining obedience to the same, and in case of any disobedience of any such writ of injunction, or other proper process, mandatory or otherwise, said railway company or common carrier, and its owners, directors, officers, agents, employees, lessees, trustees, or receivers or representatives, to whom said writ of injunction or other process, mandatory or otherwise, was directed, shall be guilty of contempt of court, and it shall be lawful for such court to issue a writ of attachment or other process of said court, incident or applicable to writs of injunction or other proper process, mandatory or otherwise, against said railway company or common carrier, to pay any sum of money, not exceeding for each railway company or common carrier, the sum of one thousand dollars for every day, after a day to be named in the order, that said railway company or common carrier shall fail to obey such injunction or other proper process, mandatory or otherwise, and said owners, directors, officers, agents, employees, lessees, trustees, or receivers or representatives, upon whom the duty may devolve or through whose agency said order or orders are to be

carried out upon failure so to do shall be deemed guilty of misdemeanor and upon conviction thereof shall be imprisoned in the county jail not less than ten days nor more than thirty days. Said moneys shall, when paid, be disposed of according to law, and the payment thereof may, without prejudice to any other mode of recovering the same, be enforced by attachment or order, in the nature of a writ of execution, in like manner as if the same had been recovered by a final decree *in personam* in such court, saving to the commission and to any other party or person interested therein, the right to appeal to the supreme court under the same rules now provided by law in relation to appeals to said court as to security for such appeal, except that in no case shall (security for such appeal be required when the same is taken by the commission; but no appeal to said supreme court shall operate to stay or supersede the order of the court, or the issuance of execution thereon, and such court may in every such matter order the payment of such costs and attorney and counsel fees as shall be deemed reasonable."

The legislature of 1911 amended section 7 in an act entitled "An act to amend section 7, chapter 72, article 8, Compiled Statutes of Nebraska for 1909, and to repeal said original section." Laws 1911, ch. 94. The first part of the former section was retained, but, beginning with "may file a petition, setting forth the particular cause or causes of objection to such decision, act, rate, rule, charge, classification, or order, or to either or all of them, in the district court," the following was substituted for the remainder of the section: "May institute proceedings in the supreme court of Nebraska to reverse, vacate or modify the order complained of. The procedure to obtain such reversal, modification or vacation of any such order or regulation made and adopted, upon which a hearing has been had before said commission, shall be governed by the same provisions now in force with reference to appeals and error proceedings from the district courts to the supreme court of Nebraska. The evidence presented before the railway commission, as reported by its official stenographer

and reduced to writing, shall be duly certified to by said stenographer and the chairman of the railway commission as the true bill of exceptions, which, together with the pleadings and filings, duly certified in said case under the seal of the railway commission, shall constitute the complete record, and the evidence upon which the case shall be presented to the appellate court; provided, however, that the time for appeal from the orders and rulings of said railway commission to the supreme court shall be limited to three months; and provided further that in no case shall the filing of a supersedeas bond suspend the putting in force or operation of any decision, regulation, rate, schedule, order of the commission of any nature whatsoever, unless such supersedeas bond is conditioned and in sufficient amount, to be approved by the commission, to insure the prompt refunding by the appealing common carrier to the parties entitled thereto, of all charges which such common carrier may collect or receive pending the appeal in excess of those fixed or authorized by the final decision in said cause by the supreme court."

This last act, it is insisted, is unconstitutional and void. Section 2, art. VI of the constitution, above quoted, prescribes the original jurisdiction of this court. If the jurisdiction which this statute attempted to confer is original, this court cannot have such jurisdiction under the constitution, unless it can be held that the "state is a party," within the meaning of that provision. Whether the state may be so far interested as to be considered a party in the sense intended by the constitution, although not named as such, or this provision must be taken literally and the state must be actually named as a party, and, if the former, whether the state is in fact defending this action of the commission, and so is the real party in interest, are interesting questions, in view of decisions of this court in cases such as *State v. Pacific Express Co.*, 80 Neb. 823, and holdings of the supreme court of the United States in the so-called rate cases. We have concluded to place our decision of this motion to dismiss the appeal upon grounds perhaps less difficult, although not entirely free from

doubt. The same section of the constitution to which we
have just referred contains also the provision that this
court shall have "such appellate jurisdiction as may· be
provided by law." This language is broad and general.
The power of the legislature to enlarge the appellate ju-
risdiction of this court is unlimited. But what did the
constitution makers regard as "appellate jurisdiction," as
the phrase is here used? This question is elaborately and
learnedly discussed in the briefs.

In *State v. Piper,* 50 Neb. 25, 33, the court said: "It
is very evident an appeal or proceeding in error will not
lie directly to this court to review the decisions of the
secretary of state under the Australian ballot act, for two
reasons: First, no provision is made therefor by the law
in question, or by any other statute; and, in the next place,
the appellate jurisdiction of this court is confined to a
review of the judgments and orders made by the several
district courts of the state. Neither error nor appeal can
be prosecuted from the decision of any other court or tri-
bunal directly to this court." The action was an original
one in mandamus to compel the secretary of state to cer-
tify to the county clerks the names of certain persons only
as nominees for certain offices. There was no question of
appeal involved, and the language above quoted was used
merely *arguendo.* If it involved a point necessary to be
decided in the case, the first reason given for holding that
no such appeal would lie was amply sufficient. It was
not necessary to say that neither error nor appeal can be
prosecuted directly to this court from the decision of any
other court or tribunal than the district court. *Cleghorn
v. Waterman,* 16 Neb. 225, is cited, which decides only that
this court can reverse, vacate or modify a judgment ren-
dered by the district court only for error appearing on
the record, and does not consider the question of the right
of appeal from other courts or tribunals. There is still a
stronger reason for not regarding *State v. Piper, supra,*
as authority in this case. At that time the constitutional
provision creating the railway commission was not in ex-
istence, and the statement that no appeal could be taken

from any other court or tribunal than the district court could not then apply to the state railway commission.

Of course, "a state may, by constitutional provision, unite legislative and judicial powers in the same body." *Prentis v. Atlantic Coast Line Co.*, 211 U. S. 210. The amendment gives very large powers to the legislature. In providing for general legislation upon the subject of the powers and duties of the commission, it uses the words: "As the legislature may provide by law." It is not necessary now to determine whether the legislature could confer the powers of a court upon this commission. It is sufficient to consider that the amendment introduces a new element into our constitution, and, construing the other provisions together with this amendment its purpose and scope must not be limited only as the necessary meaning of the whole instrument requires. We must therefore consider this constitutional amendment itself in the light of other provisions of the constitution, and discover whether the legislative construction of its power to allow appeals from the decisions of the railway commission is so clearly unwarranted as to require us to hold this legislation unconstitutional for that reason. The words "appeal" and "appellate" are words of general application in the law. Ordinarily they refer to the removal of proceedings from one court or tribunal to another for review. In section 9, art. IX of the constitution, the word appeal signifies a transfer of proceeding for review from an executive office to the district court. The former decisions of this court would, perhaps, preclude construing the word appellate in section 2, art. VI, so broadly. But it is not necessary to do so in this case.

Article II of the constitution provides: "The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted." The last clause of this provision implies that some of the provisions of the constitution

expressly direct or permit one department of government to exercise powers belonging to another department. The state railway commission is considered as belonging to the legislative department. Has this amendment given it judicial powers? In providing for this appeal, the legislature considered that this amendment and the statutes authorized thereby have given the commission administrative and judicial powers, in addition to its legislative powers, the main purpose of its creation. It has not attempted to authorize this court to act in a legislative capacity. The decision of the commission in this case compelling physical connection of these telephone systems is not wholly legislative. Even legislative acts may be of such a nature and so grossly unreasonable as to present a judicial question for the consideration of the courts. But, so far as they are legislative, the courts in this state have no jurisdiction over them by appeal or otherwise. "Proceedings legislative in nature are not proceedings in a court, within the meaning of Rev. St., sec. 720, no matter what may be the general or dominant character of the body in which they may take place. * * * The nature of the final act determines the nature of the previous inquiry. * * * And all that we have said would be equally true if an appeal had been taken to the supreme court of appeals and it had confirmed the rate. Its action in doing so would not have been judicial, although the questions debated by it might have been the same that might come before it as a court, and would have been discussed and passed upon by it in the same way that it would deal with them if they arose afterwards in a case properly so called." *Prentis v. Atlantic Coast Line Co.*, 211 U. S. 210, 226. That was an action in the federal courts to enjoin a railroad rate prescribed by the corporation commission of Virginia. The statute of the state provided for an appeal directly from the commission to the supreme court of the state. The supreme court of the United States held that when such appeal was taken the action of the commission was not final before the supreme court of the state had passed upon the appeal; that then the rate was fixed, if

affirmed by the supreme court, and that then action might be brought in the same manner and for the same purpose as though there had been no appeal from the decision of the commission. This holding was upon the ground that the supreme court of the state was given legislative jurisdiction by their statute providing for appeal, and acted in that capacity in reviewing the action of the commission, so that the legislation was not complete until the court had acted. This court has no legislative powers, but the same conclusion is necessary for another reason. The statute providing for this appeal does not expressly require or authorize this court upon appeal to act in a legislative capacity.

Our constitution forbids the legislature to confer legislative powers upon the courts. If the statute providing for this appeal necessarily does so, such legislation would be void. The statute must be sustained if it will admit of any reasonable construction in harmony with the constitution. By section 11 of the act provision is made for enforcing the orders of the commission when they become effective. By subdivision e, above quoted, the remedy of injunction and "mandatory order" are recognized as existing independently of the remedies provided by the act. Section 7 of the original act, which provided for an appeal to the district court, is the only part of the act amended. That section provided that, when the proceedings were so removed to the district court, that court should be "sitting as a court of equity," and the case should "be tried and determined as other civil cases in said court." These provisions were omitted in the amended section, and in lieu thereof it is provided that the procedure "shall be governed by the same provisions now in force with reference to appeals and error proceedings from the district courts to the supreme court of Nebraska." The evidence taken before the commission is certified to this court, and this court is to act only upon the record so made. The court is to "reverse, vacate or modify" the decision of the commission. These words are borrowed from the statute

which provided for petitions in error to this court in ordinary civil suits, and it seems plain that the legislature did not attempt to give this court any other jurisdiction on these appeals from the commission. When the decision of the commission has been "fixed and authorized" by this court upon appeal, it becomes the final order of the commission, so that by this amendment of section 7 the legislature has not attempted to confer legislative power upon this court.

We conclude that, under the power given to the legislature to provide generally the appellate jurisdiction of this court, in view of the scope and purpose of the constitutional amendment which creates the railway commission, and the power given to the legislature by that amendment, and the general statutes enacted pursuant to that power, the amendment of the statute providing for appeals directly to this court is not in violation of the constitution. The motion to dismiss the appeal is therefore overruled.

2. In 1913 the legislature enacted a statute entitled "An act compelling all persons, associations or corporations doing a public telephone business in this state to connect trunk or toll lines through their switching stations, and to give and make terminal service to all subscribers from any point in the state of Nebraska, regardless of the ownership of lines or routes over which such message or service was received. To provide in what manner same shall be done, and giving certain instructions to the state railway commission regarding the division of toll charges and the enforcement of the provisions of this act, and to provide a penalty for the violation of the same, and to repeal all acts and parts of acts in conflict herewith." Laws 1913, ch. 79. The first section of the act is as follows: "Any telephone company, corporation, association, person or persons doing a public telephone business in the state of Nebraska shall take the calls or messages coming from any other telephone company, corporation, association, person or persons, and so switch and connect its wires that such telephone message from any point in

Nebraska may be delivered to any subscriber served by its telephone exchange or switched through, so that any message may be passed on to another exchange over such trunk or toll lines as may be available and designated by the exchange or switching station where the call originated, regardless of the ownership of such lines. And such telephone company, corporation, person or persons shall also take calls from its subscribers and public pay stations and pass such calls through its exchange toward destination and over the lines and the route designated by the person making such telephone call if there be competing lines existing between such points. Provided, that, in case the person making such telephone call, does not designate a route for such message, or that no competing lines exist between points of origination and destination, then the company may by its operator at originating point, make such designation of route, but calls or messages must be switched through to destination if the point be reached by any connecting wires." The second section provides for maintaining connections when connecting plants or exchanges have been consolidated. Section 3 makes provision for division of toll charges when physical connection is made between plants or exchanges; and section 4 provides a penalty for violation of the act.

The appellant contends (a) that the railway commission has no jurisdiction of the controversy; (b) that the commission had no authority to make an order in reference to physical connection between telephone lines as that matter is regulated by statute; (c) that chapter 79, laws 1913, is unconstitutional, because it provides for taking of private property without due process of law, which is forbidden by the state constitution, as well as by the fourteenth amendment to the federal constitution; (d) that the order of the commission is void for the same reason. It also contends that the order of the commission is not supported by the evidence and that the Fremont Telephone Company was a necessary party. It is contended that the statute itself fixes and determines the rights of the public and of individuals, and has left nothing for the railway

commission to do in that regard, and therefore the state railway commission has no jurisdiction in the matter. It must be conceded that the statute is somewhat indefinite as to the duties of the railway commission in the matter. The title of the act, however, recites that one of the purposes of the act is to give "certain instructions to the state railway commission regarding the division of toll charges and the *enforcement of the provisions of this act;"* and section 3 of the act provides that "in case of a failure to agree (upon division of toll charges) the company where the messages originate and the company where the messages destinate shall report to the railway commission," etc. It is suggested in the appellant's brief, and perhaps the record discloses, that there are many matters involved in making physical connections of telephone lines which require adjustment in detail when the parties fail to agree, and to adjust these matters equitably between the parties would seem to be the proper function of the commission. In this connection it is also insisted in the brief that the order of the railway commission should be reversed because of its indefiniteness in not having made the necessary adjustment of the rights and duties of the parties and the expenses incurred in complying with the order of the commission. The appellant is not in a position to complain of this. It failed entirely to bring this matter to the attention of the commission. Its answer to the complainant before the commission was substantially a general denial. It made no attempt to present the issues which it now insists the commission should have determined, and offered no evidence from which the commission might make such a determination.

The appellant contends that the order compelling it to make physical connection with the Hooper company amounts to the taking of its property without compensation, and, as the statute makes no provision for compensation, it violates both the state and federal constitution in that respect. It is conceded that the appellant is engaged in the carrying on of a general telephone business, and operates telephone exchanges located in various towns in

the states of Nebraska, Iowa, and South Dakota; that it owns and operates toll lines which connect the telephone exchanges owned by it in those states, which lines connect with toll and long distance lines and with telephone exchanges owned and operated by other persons and companies. It is also conceded that its toll lines can be physically connected with the lines of the Hooper company, but its contention is that the "result of such a connection is to at once pass to the Hooper company as much dominion and control over the toll lines as the Nebraska company itself possesses, and when service is given over such a connection the Hooper company is in control, not only of the toll line, but likewise of its operation.     *     *     * Telephone lines are operated by an electric current, and wherever the line terminates there lies the control of the entire line. But one conversation can pass over a circuit at the same time, and the minute the telephone circuit is connected with the switchboard of the Hooper company the switchboard becomes the end of the circuit, and it lies within the power of the Hooper company to interfere with and control the traffic of the entire circuit all the way between Omaha and Norfolk," and that there is no escape from the conclusion that physical connection with the toll circuit "subjects the property of the Nebraska Telephone Company to certain risks and dangers against which the Nebraska Telephone Company cannot guard, because these risks and dangers arise from the fact that the Hooper Telephone Company has the physical possession of the end of the toll circuit."

Perhaps we do not fully understand the argument and reasoning upon this point. It appears that physical connection of different telephone lines has been made in many instances without any such direful results. When an individual asks for connection of his private telephone with the toll lines of the company, and such connection is made for him, he has the exclusive use of the toll line of the company for a certain time. There is no doubt that if he complies with the reasonable regulations of the company he is entitled to such use of the line, and that the

company could be compelled to furnish such use upon reasonable terms and upon complying with reasonable regulations without any greater use of the company's property or any greater danger of injury thereto than in case such service is furnished to a patron of the company itself. If there are inherent reasons for making the distinction which the appellant seeks to make, that fact does not appear from the evidence in this record. The brief does not make it clear that this court should take judicial notice of such conditions.

Another contention is that, since the order of the commission includes physical connection with the lines formerly operated by the Fremont Telephone Company, that company is a necessary party to these proceedings, without which no such order could be made. It is conceded in the record that the Nebraska Telephone Company has purchased, and now owns and controls, the stock of the Fremont Telephone Company, except a few shares not nominally held by the Nebraska company, the ownership of which is not disclosed in the record. Since purchasing this stock, the Nebraska company has transferred the business of the Fremont company to its own exchange and is using the lines of the Fremont company in connection with its own business. It does not appear from the evidence that it would be impracticable for the railway commission to adjust equitably the terms and conditions upon which the Nebraska company might make physical connection of these lines with those of the Hooper company. We cannot therefore determine from this record that the railway commission has exceeded its powers in proceeding to a determination of the matter without bringing in the Fremont company.

The order of the Nebraska state railway commission is affirmed, without prejudice to either party to apply to the commission to introduce further evidence, and obtain the order of the commission adjusting terms and expenses of making the connection, and such other or further action on the part of the commission as may be necessary.

AFFIRMED.

ROSE, J., not sitting.