**CHICAGO & N. W. RY. CO. v. BAUMAN,
County Treasurer, et al.
No. 9749.**

Circuit Court of Appeals, Eighth Circuit.
Feb. 13, 1934.

Wymer Dressler, of Omaha, Neb. (Robert D. Neely and Hugo J. Lutz, both of Omaha, Neb., and Samuel H. Cady and William T. Faricy, both of Chicago, Ill., on the brief), for appellant.

Edwin Vail, of Lincoln, Neb. (Paul F. Good, of Lincoln, Neb., on the brief), for appellees.

Before STONE, SANBORN, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

This is a suit to enjoin thirty-two county treasurers of the state of Nebraska from collecting their several portions of the state and county taxes, based upon an assessment of appellant's railroad operating property in Nebraska for the year 1931, and certified by the state board of equalization and assessment to the county clerks of said counties through which appellant's line of railroad operates.

The petition, or bill in equity, for ground of the relief sought, alleges that said taxes have been assessed in violation of the statutes of the state of Nebraska which require that all property in the state, not expressly excepted from taxation, shall be valued and assessed at its actual value; that, in violation of those statutes, and of the Fourteenth Amendment to the Constitution of the United States, the assessment by the board was excessive, unlawful, and discriminatory, and, if used as the basis of collection by the defendant county treasurers, will deprive appellant of its property without due process of law, and will deny to it the equal protection of the law. It is further alleged that said assessment is the result of an unlawful discrimination against appellant, which has been carried on from year to year as a practice by the state board of equalization and assessment, whereby appellant has been, and now is, compelled to bear an undue share of the tax burden of the state; that said assessment was arrived at in an arbitrary and unconstitutional manner, and by arbitrary and illegal methods. It is alleged that under the statutes of Nebraska appellant will be compelled to pay the taxes assessed, unless appellees are restrained in this action; that it has no adequate remedy for the protection of its rights except in a federal court of equity. Various acts of omission and commission on the part of the state board of equalization and assessment are set out in support of appellant's contention that the practice of the board has been arbitrary and its methods contrary to applicable law. It would serve no useful purpose to burden this opinion with a detailed enumeration of such alleged acts. In general, the contention of appellant in its pleading is that its property in Nebraska has been grossly overvalued to the extent, approximately, of $6,000,000; that this is the result of a studied and repeated practice on the part of the state taxing officials whereby appellant will be compelled to bear an undue and discriminatory share of the tax burden of the state, unless the relief prayed for be granted.

The District Court sustained a motion to dismiss in the nature of a demurrer, and dismissed the bill "for want of equity." The contentions of appellees in support of the decree of dismissal are twofold:

1. That the bill fails to state a cause of action in equity.

2. That appellant has an adequate remedy at law.

There are two distinct branches of the first contention.

A. Counsel for appellees argue that "this court may consider only such allegations of the bill as are material, relevant and well pleaded. It may not consider conclusions of law, evidentiary facts, nor mere inferences or conclusions of fact." They urge that mere errors in calculation are not sub-

ject to review even though they may result in overvaluation; that the allegations of the bill are insufficient to state an intentional and fraudulent discrimination; that it is not enough to allege that appellant's property was valued too high, it must also be alleged that other property was undervalued. It is, of course, true that in the absence of unlawful procedure, or of apparent misjudgment or omission of vital facts, the courts will not interfere with the board's jurisdiction of the subject matter. Chicago & Northwestern Ry. Co. v. State Board of Equalization and Assessment, 121 Neb. 592, 237 N. W. 657, 238 N. W. 520, certiorari denied 286 U. S. 551, 52 S. Ct. 504, 76 L. Ed. 1286. However, it is always open to inquiry, under proper allegations, whether the misjudgment or omission is vital and intentional. Here it is emphasized that the action of the board was pursuant to a studied and repeated practice of long standing, with the result that the property of appellant was grossly overvalued. The allegations of the bill expressly negative the possibility that the overvaluation charged was the result of miscalculation or mistake. It was unnecessary to plead in the alternative that other property was undervalued. It fairly appears from the bill that other property in Nebraska was, in general, assessed at 75 per cent. of its true value as required by law and recognized in practice. In such case, a deliberate overvaluation of appellant's property would effect discrimination, and is made sufficiently obvious.

 It was unnecessary for appellant to plead in detail the evidence upon which it relies to sustain its charge. It is, however, among other things alleged that, in its valuation of appellant's property, the board included items not enhancing in any way the value of the railroad operating property in Nebraska, and therefore not assessable under the laws of that state. Such action, if established, has been held to violate the due process clause of the Fourteenth Amendment. Baldwin et al. v. Missouri, 281 U. S. 586, 50 S. Ct. 436, 74 L. Ed. 1056, 72 A. L. R. 1303; Safe Deposit & Trust Co. v. Virginia, 280 U. S. 83, 50 S. Ct. 59, 74 L. Ed. 180, 67 A. L. R. 386.

"Systematic, repeated, and continuing violations of Constitution or law, to complainant's injury, present ample ground for equitable relief." Chicago & North Western Ry. Co. v. Eveland (C. C. A. 8) 13 F.(2d) 442, 443. Compare Chicago, Burlington & Quincy R. R. Co. v. Osborne, 265 U. S. 14, 44 S. Ct. 431, 68 L. Ed. 878.

We do not think the criticism that the material allegations of the bill are not well pleaded is sound.

B. The second branch of appellees' first contention is that this controversy has not reached the justiciable stage. Their position is thus stated in the brief: "The assessment of railroad property for taxation purposes in Nebraska is an administrative proceeding, including as an integral part thereof a quasi-judicial hearing before the State Board of Equalization and an appeal therefrom to the Supreme Court of the state; and the proceeding is not completed unless or until an appeal is taken."

They contend that the Supreme Court of Nebraska has full power on appeal to examine the matter de novo and reach an independent conclusion as a part of such administrative proceeding. This necessarily implies that the Supreme Court on such appeal acts in an administrative capacity.

Taxes similarly assessed for the year 1922 were before the Supreme Court of the United States in Chicago, Burlington & Quincy Railroad Company, Chicago Northwestern Railway Company, and Chicago, St. Paul, Minneapolis & Omaha Railway Company v. Osborne, State Tax Commissioner of Nebraska et al., 265 U. S. 14, 44 S. Ct. 431, 68 L. Ed. 878. At that time the only remedy given by the Nebraska statute to obtain relief from taxes unlawfully assessed, as here charged, was by writ of error to the Supreme Court of the state upon a record prepared by the board of equalization and assessment. It was held that this remedy was inadequate and that the case was cognizable by the district court of the United States in suits for injunction.

In an attempt to meet this ruling the Nebraska Legislature enacted section 77-509, Compiled Statutes of Nebraska 1929. This statute is long and involved, but its parts material to this controversy follow:

"Either party desiring to appeal from said assessment as so finally determined by the Board of Equalization and Assessment shall, within ten days after said assessment has finally been made and equalized, file with the Board of Equalization and Assessment, a notice in writing stating that an appeal is about to be taken to the Supreme Court of Nebraska from the assessment so finally determined upon and shall, within thirty days from the expiration of the said ten days, file with the clerk of the Supreme Court a transcript of the proceedings of the Board of Equalization and assessment together with the complaint

174

made by said party so complaining, and in said statement the appellant shall state what amount said appellant claims the assessment ought to be and the amount of excess or deficiency therein. And the Supreme Court of the State of Nebraska is hereby vested with jurisdiction and authority to determine as to said complaint and shall have jurisdiction and is hereby vested with authority to lower or raise said assessment as said court shall deem to be just and equitable. * * *

"That it shall be the duty of the Board of Equalization and Assessment, upon demand of either party desiring to appeal, to furnish to said party a full and complete transcript of all the records and proceedings of said Board in making said assessment, and also a full and complete record and Bill of Exceptions of the evidence considered and taken by the Board in making said assessment, and a full statement by the Board of the evidence upon which it acted in making said assessment. * * *

"The Supreme Court shall also have the authority to permit the introduction of additional evidence, if it deems same necessary in order to fairly and justly determine the reasonableness of the assessment so made, and the Supreme Court may make any further order in reference to the matter that it shall deem just and proper, so as to grant to both parties a fair, adequate and reasonable opportunity to have said complaint heard and determined. That the Supreme Court is hereby vested with jurisdiction, as aforesaid, to hear and determine the matter in controversy de novo, and to adjudge and determine the assessable value of the property of said railroad company, and shall upon a final determination of said cause so appealed, adjudge and determine from all the evidence before it, what is the fair and reasonable value of the railroad property so assessed, and shall transmit its judgment to the Board of Equalization and Assessment, and said judgment shall be final in reference to said assessment. * * *

"Immediately after a final determination thereof by the Supreme Court of the State, the Board of Equalization and Assessment shall forthwith certify to the county clerks of the respective counties as aforesaid, the final judgment of the court determining the true value of the property. The taxing boards of the respective counties shall have authority to levy and collect taxes under the assessment so made against said railroad property and upon a final determination by the court of the value of said property, shall

have authority to correct the assessment to comply with the judgment of the court."

The question before us now is whether the Supreme Court of Nebraska, under this statute, does, or can, act in an administrative capacity, in which case the controversy, absent appeal, had not reached a justiciable stage and the Federal District Court was without jurisdiction. If the Supreme Court of Nebraska, on such appeal, acts in a judicial capacity, as distinguished from administrative, then the case had reached a justiciable stage when it left the board of equalization and assessment, and appellant was entitled to its remedy in the national courts.

Article 2 of the Constitution of Nebraska provides: "The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others except as hereinafter expressly directed or permitted."

Fortunately the construction of this article of the Nebraska Constitution has been definitely settled by the Nebraska court of last resort, and by that ruling we are bound in the case before us. Consistently, through a long line of decisions, it has been held that "the division of powers between the several branches of the state government, made by article 2 of the Constitution, is comprehensive and final, and the Legislature can neither add to nor subtract from the classes or character of questions with which the courts are entitled to deal." Tyson et al. v. Washington County, 78 Neb. 211, 110 N. W. 634, 12 L. R. A. (N. S.) 350; In re Railroad Commissioners, 15 Neb. 679, 50 N. W. 276; State ex rel. v. Neble (State ex rel. v. Latenser), 82 Neb. 267, 117 N. W. 723, 19 L. R. A. (N. S.) 578; Winkler v. City of Hastings, 85 Neb. 212, 122 N. W. 858; Hooper Telephone Co. v. Nebraska Telephone Co., 96 Neb. 245, 147 N. W. 674; Searle v. Yensen, 118 Neb. 835, 226 N. W. 464, 69 A. L. R. 257.

In Tyson et al. v. Washington County, an appeal to the district court of a county was taken from the action of a county board ordering the construction of a drainage ditch. The district court dismissed the appeal, holding that the order of the county board was not a judicial act, was final and not appealable. The Supreme Court affirmed this ruling on the ground that Nebraska courts have judicial functions only.

In State ex rel. v. Neble, a law authorizing judges of a state district court to ap-

point an officer "deemed necessary for the good government of the city" was held unconstitutional and void under section 1 of article 2 of the Nebraska Constitution for the reason that it imposed the duty of appointment upon the judicial department of the state, while the duty of appointment calls into action an executive or administrative function which could, under the Constitution, be exercised only by executive or administrative officers—in that case the mayor and council.

Winkler v. City of Hastings involved an application to the city council to detach certain territory from the city under a statute providing an appeal to the district court of the county from an order denying such application. The district court took jurisdiction and detached the land. The Supreme Court reversed this judgment and dismissed the appeal, holding that "where legislative power to detach territory from a city has been delegated by statute to the mayor and council, an appeal from the action of that body in refusing to disconnect particular tracts cannot be made the means of transferring such power to the district court." This ruling was based specifically upon section 1 of article 2 of the Constitution.

In re Railroad Commissioners, supra, involved a question of the power of the Legislature, under the constitutional distribution of departmental powers, to create railroad commissioners. It was held that the Legislature had no such power; that "the supervision of railroads by a commission would be proper, but the power must be conferred on existing offices already existing." This case illustrates the jealous care with which the Nebraska courts have preserved the constitutional lines of demarcation between the several state departments.

In Searle v. Yensen, supra, the rule is stated with clearness and emphasis: "Under section 1, art. 2, of the Constitution of this state, dividing the powers of government into three departments, legislative, executive and judicial, and prohibiting any one department from the exercise of the powers of either of the others, the Legislature may not impose upon the courts the performance of nonjudicial duties, nor delegate to them any legislative power."

The case of Hooper Telephone Co. v. Nebraska Telephone Co., 96 Neb. 245, 147 N. W. 674, 677, is very interesting and instructive in disclosing the settled policy of Nebraska, as declared by the decisions of its courts in construing its fundamental law. The Hooper Telephone Company had filed a complaint with the state railway commission, alleging that the Nebraska Telephone Company had purchased the stock of a competing company, and asking the commission to order it, the Nebraska Company, to connect its switchboard and exchange with complainant's lines. The railway commission, after hearing, ordered the connection made, and the Nebraska Company appealed to the Supreme Court pursuant to a statute providing that any person or persons affected, being dissatisfied with a decision of the railway commission, "may institute proceedings in the Supreme Court of Nebraska to reverse, vacate or modify the order complained of." The court, in taking jurisdiction, was careful to guard against any apparent invasion of the constitutional prohibition against assuming legislative functions. It said: "This court has no legislative powers. * * * Our Constitution forbids the Legislature to confer legislative powers upon the courts. If the statute providing for this appeal necessarily does so, such legislation would be void."

It held its jurisdiction on this appeal to be one purely judicial in character upon the stated ground that "even legislative acts may be of such a nature and so grossly unreasonable as to present a judicial question for the consideration of the courts." It determined this question upon the record presented, without challenge to the fact finding powers of the railway commission, and concluded that the commission had not exceeded its powers in the premises. It expressly pointed out the distinction between the case before it and that in Prentis v. Atlantic Coast Line Co., 211 U. S. 210, 226, 29 S. Ct. 67, 53 L. Ed. 150, in the following language: "This holding (in the Prentis Case) was upon the ground that the Supreme Court of the state (Virginia) was given legislative jurisdiction by their statute providing for appeal, and acted in that capacity in reviewing the action of the Commission, so that the legislation was not complete until the court had acted. This court has no legislative powers."

It is evident from the foregoing that, under the Constitution of Nebraska, as construed by the highest court of that state, the Legislature has no power to confer either legislative, executive, or administrative powers upon the courts. The board of equalization and assessment is an administrative body under the executive department of the state. Its origin is forecast in section 28 of article 4 of the Constitution dealing with the executive. That section reads as follows: *"Tax Commissioner, Powers, Compensation.* **A**

Tax Commissioner shall be appointed by the Governor with the advice and consent of the Senate. He shall have jurisdiction over the administration of the revenue laws of the state, and together with the Governor, Secretary of State, State Auditor and State Treasurer shall have power to review and equalize assessments of property for taxation within the state. He shall have such other powers and perform such other duties as the Legislature may provide. His term of office and compensation shall be as provided by law."

By act of 1921, now section 77-1001, Comp. St. Nebraska 1929, the state board of equalization was created with the same membership named in said section 28 of article 4. It is clearly an administrative body within the executive department of the state. This is substantially conceded by counsel for the state, who say in their brief: "We think that the proceedings, as a whole, as we have hereinbefore pointed out, are administrative. They are certainly not legislative."

However, as we have seen it is just as futile to attempt to confer administrative powers upon the Supreme Court as it is to confer legislative powers; and such must be the effect of the statute permitting appeal to that court in these tax cases if appellees' argument that this action has not reached a justiciable stage is to be indulged. Clearly it has reached that stage and the Federal District Court, accordingly, had jurisdiction. Reference is made to section 2 of article 5 of the Nebraska Constitution, which provides that the Supreme Court shall have jurisdiction in all cases relating to the revenue. This but adds original jurisdiction to the appellate jurisdiction of the Supreme Court provided by statute—both judicial in character.

We consider next whether appellant has an adequate remedy at law. This contention of appellees is based upon the provisions of section 77-1923, Compiled Statutes of Nebraska 1929, wherein it is provided that if a taxpayer claims that the tax, or any part thereof, is invalid for the reason that it was levied or assessed for an illegal or unauthorized purpose, or that the property was not liable to taxation, or has been twice assessed in the same year and taxes paid thereon, he may pay the same to the treasurer or other proper authority in all respects as though the tax were legal and valid, and "may, at any time within thirty days after such payment, demand the same in writing from the treasurer of the state, or the county, city, village, township, district or other subdivision, for the benefit, or under the authority, or by the request of which the same was levied, and if the same shall not be refunded within ninety days thereafter, may sue such county, city, village, township, district or other subdivision for the amount so demanded; and if upon the trial it shall be determined that such tax, or any part thereof, was levied or assessed for an illegal or unauthorized purpose, or was for any reason invalid, judgment shall be rendered therefor with interest and the same shall be collected as in other cases."

The adequacy of a remedy at law is not conclusively determined by the statutes of a state, nor by permission to sue at law in a state court on the same cause of action. One entitled to sue in a federal court is entitled to invoke its jurisdiction. Smyth v. Ames, 169 U. S. 466, 18 S. Ct. 418, 42 L. Ed. 819; Risty v. Chicago, R. I. & P. Ry. Co., 270 U. S. 378, 46 S. Ct. 236, 70 L. Ed. 641; Dawson v. Kentucky Distilleries & Warehouse Co., 255 U. S. 288, 41 S. Ct. 272, 65 L. Ed. 638; Chicago, Burlington & Quincy R. Co. v. Osborne, 265 U. S. 14, 44 S. Ct. 431, 68 L. Ed. 878; St. Louis-San Francisco Ry. Co. v. McElvain (D. C.) 253 F. 123; Franklin v. Power Co. (C. C. A. 9) 264 F. 643.

"The test of equity jurisdiction in a federal court is the inadequacy of the remedy on the law side of that court and not the inadequacy of the remedies afforded by the state courts." Risty et al. v. Chicago, R. I. & P. Ry. Co., 270 U. S. 378, 46 S. Ct. 236, 240, 70 L. Ed. 641; St. Louis-San Francisco Ry. Co. v. McElvain (D. C.) 253 F. 123; Franklin v. Power Co. (C. C. A. 9) 264 F. 643.

Especially where such remedy at law, if available, would entail a multiplicity of suits, or where the legal remedy under the state law is uncertain. Risty v. Chicago, R. I. & P. Ry. Co., supra; Dawson v. Kentucky Distilleries & Warehouse Co., 255 U. S. 288, 41 S. Ct. 272, 65 L. Ed. 638; United States v. Board of Commissioners of Osage County, Okl., 251 U. S. 128, 40 S. Ct. 100, 64 L. Ed. 184; Union Pacific R. Co. v. Commissioners, 247 U. S. 282, 38 S. Ct. 510, 62 L. Ed. 1110.

In suits to enjoin the collection of taxes, special circumstances should be alleged to show that the remedy afforded by the state law would be inadequate, and: "In general, the jurisdiction of equity to avoid multiplicity of suits at law is restricted to cases where there would otherwise be some necessity for the maintenance of numerous suits between the same parties, involving the same issues of law or fact. It does not extend to cases where there are numerous parties plaintiff or de-

fendant, and the issues between them and the adverse party are not necessarily identical." Matthews et al. v. Rodgers et al., 284 U. S. 521, 52 S. Ct. 217, 221, 76 L. Ed. 447; Stratton v. St. Louis Southwestern Ry. Co., 284 U. S. 530, 52 S. Ct. 222, 76 L. Ed. 465.

To recover, in the state courts, taxes paid under the provisions of section 77-1923 of the Nebraska Statutes, the bill alleges, it would be necessary to sue county treasurers in thirty-two different courts and counties, thus involving a multiplicity of suits. There is but one plaintiff, the issues between it and the adverse parties are identical, and, while there are a large number of defendants, due to the statutory basis of apportionment, it would seem that the actions are between the same parties within the rule announced by the Supreme Court conditioning the jurisdiction of equity where a multiplicity of actions at law would be involved.

Counsel for appellees concede that, if actions were to be brought in a federal court, because of diversity of citizenship, jurisdiction would fail in some of the counties because of the amount involved.

We think, upon the allegations of the bill, that an adequate remedy at law is not disclosed, and that jurisdiction in equity in the district court sufficiently appears.

It follows that the decree below should be reversed, and the case remanded to the District Court, with directions to reinstate it upon the docket for hearing upon the merits. It is so ordered.