RISTY ET AL., COUNTY COMMISSIONERS, ET AL. *v.* CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.

THE SAME *v.* CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

THE SAME *v.* CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY.

THE SAME *v.* NORTHERN STATES POWER COMPANY.

THE SAME *v.* CITY OF SIOUX FALLS.

THE SAME *v.* GREAT NORTHERN RAILWAY COMPANY.

APPEALS FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

Nos. 95–100.    Argued January 7, 8, 1926.—Decided March 1, 1926.

1. When the District Court and Circuit Court of Appeals agree upon all material facts, this Court will consider them only so far as needful to pass on questions of law.    P. 381.
2. The statutes of South Dakota (Rev. Code 1919, §§ 8458 et seq., §§ 8467, 8470,) contain no provision by which the cost of reconstructing or maintaining existing drainage works may be assessed on lands which were not embraced within or assessed in connection with the project as originally established.    P. 383.
3. It is the duty of the federal courts, in suits brought in or removed to the District Courts, to decide for themselves all relevant questions of state law, including the meaning of the state statutes where they have not been clearly and decisively passed upon by the state court.    P. 387.

4. Questions involving the Federal Constitution, giving the federal court jurisdiction, need not be passed upon when the case is decided by applying the state law.  P. 387.

5. Suits in the federal court to enjoin state officials from equalizing benefits of drainage work and making assessments of the cost, *held* not premature, but within equitable jurisdiction, where the ground of the suits was the invalidity of the whole proceedings, and not merely inequality in apportionment of benefits, and where the effects of the proceedings would be to establish liens on plaintiffs' lands, clouding the titles, and subject them to liability for future assessments.  P. 387.

6. The remedy, in such cases, afforded by § 8465 of So. Dak. Code, 1919, does not appear to be coextensive with the relief afforded by equity.  *Id.*

7. The test of equity jurisdiction in a federal court is the inadequacy of the remedy on the law side of that court, and not the inadequacy of the remedies afforded by the state courts.  P. 388.

8. It does not appear that the law of South Dakota affords a remedy, in cases like the present, by payment of the assessment and suit to recover it back, which could be availed of in the federal court, or that such remedy, if available, would not entail a multiplicity of suits.  P. 388.

9. Where the legal remedy under the state law is uncertain, the federal court, (having jurisdiction as such of the case,) has jurisdiction in equity to enjoin illegal assessments.  P. 389.

10. Jurisdictional amount *held* involved in suits against a board to enjoin illegal apportionments and assessments of cost of drainage work, where the board had made tentative assessments against plaintiffs in excess of that amount, and the basis of the suits was want of jurisdiction to make such apportionments and assessments.  P. 389.

11. Plaintiffs *held* not estopped to question the legality of proceedings to extend drainage assessments to their land outside the drainage area, because of their relation to the proceeding or to the construction before they had knowledge of the purpose so to extend the assessments.  P. 389.

12. A bill by a city to restrain the laying of drainage assessments under a law of its own State, as violative of the Fourteenth Amendment, is too unsubstantial to confer jurisdiction on a federal court, since the Amendment does not restrain the power of the State and its agencies over its municipal corporations.  P. 389.

297 Fed. 710, affirmed in part; reversed in part.

APPEALS from decrees of the Circuit Court of Appeals, which affirmed decrees of the District Court (282 Fed. 364,) in favor of four railroad companies, a power company, and a city, in six suits brought by them to enjoin a board of county commissioners and certain state officers, of South Dakota, from extending apportionment of benefits and assessments of costs, of a drainage project, to outside lands.

*Messrs. Benjamin I. Salinger, N. B. Bartlett,* and *E. O. Jones,* for appellants.

*Mr. Edward S. Stringer,* for appellee in No. 95, submitted. *Messrs. M. L. Bell, W. F. Dickinson, Thomas D. O'Brien,* and *Alexander E. Horn* were also on the brief.

*Mr. E. L. Grantham,* for appellee in No. 96, submitted. *Messrs. C. O. Bailey, J. H. Voorhees, T. M. Bailey, H. H. Field,* and *O. W. Dynes,* were also on the brief.

*Mr. C. O. Bailey,* with whom *Messrs. J. H. Voorhees, T. M. Bailey, Roy D. Burns,* and *R. L. Kennedy* were on the brief, for appellees in Nos. 97 and 99.

*Mr. R. M. Campbell,* for appellee in No. 98, submitted. *Messrs. Harold E. Judge* and *John H. Roemer* were also on the brief.

*Mr. Harold E. Judge,* for appellee in No. 100, submitted. *Mr. F. G. Dorety* was also on the brief.

MR. JUSTICE STONE delivered the opinion of the Court.

Separate suits were brought by the several appellees, in the United States District Court for South Dakota, to enjoin the County Commissioners, the Auditor and the Treasurer of Minnehaha County, South Dakota, from making any apportionment of benefits or assessments of costs affecting the property of the several appellees, for

the construction or repair of a drainage system in the area within the county embraced in a project known as "Drainage Ditch No. 1 and 2."

In all of the suits, except No. 99, there was diversity of citizenship. In each it was alleged that an amount in excess of the jurisdictional requirement was in controversy, and in each it was alleged that proceedings purporting to be had under the South Dakota drainage statutes, with respect to the lands of the appellees, were unauthorized and void, and that those statutes and proceedings denied to appellees due process of law and the equal protection of the laws, in contravention of the Constitution of the United States. The suits were tried together and decrees were given for the plaintiffs by the District Court. 282 Fed. 364. The Circuit Court of Appeals for the Eighth Circuit, on appeal, affirmed the decrees, 297 Fed. 710, and the cases are brought here on appeal. Jud. Code, §§ 128, 241, before Act of February 13, 1925. *Greene* v. *Louisville & Interurban R. R. Co.*, 244 U. S. 499, 508. Petition for certiorari was denied, 266 U. S. 622.

The two courts below agree as to all material facts. We accordingly consider them here only so far as is needful to pass on questions of law. *United States* v. *State Investment Co.*, 264 U. S. 206, 211.

In 1907 the Board of County Commissioners of Minnehaha County, acting under the constitution and laws of the State, established "Drainage Ditch No. 1," extending from a point north of the city of Sioux Falls, thence south, and then to the east of Sioux Falls, three miles in all, to the Big Sioux River, into which it emptied. From the main ditch, a spur ditch was extended northwest to a point near the Big Sioux River, which from that point passes to the southwest and thence flows east, forming a loop about the principal part of the city of Sioux Falls, and finally flows through the city on its easterly side in a northeasterly direction.

In 1910 the Board of County Commissioners established drainage ditch No. 2, extending northerly from the north terminus of ditch No. 1 for a distance of twelve miles. The two ditches thus formed one continuous ditch, draining agricultural lands lying to the north of the city. Both ditches, and the assessment districts in connection with them, are conceded to have been lawfully established.

In 1916 the river broke through its banks into the area drained by the spur ditch, and, uniting with the flood water flowing from the river through ditch No. 2, flooded the main ditch, No. 1, washed out and destroyed a spillway on ditch No. 1, and, in its uncontrolled flow caused extensive damage. There was danger that the river by its flow through the ditch would be diverted from its natural course, cutting off the city's water supply and causing other damage to the city and to individuals.

In August, 1916, a proceeding was instituted by petition to the Board of County Commissioners, purporting to be pursuant to statute, "to reconstruct and improve drainage ditches numbers one and two . . . and to pay therefor by an assessment upon the property, persons and corporations benefited." This proceeding resulted in resolutions of the Commissioners purporting to establish "Drainage District No. 1 and 2" and providing for the construction of the proposed ditch. The location fixed for it, however, was identical with that of the old ditches No. 1 and No. 2. The County Commissioners then caused the previously established ditch No. 1 and ditch No. 2 to be diked, cleaned out, and widened and deepened at certain points; the river to be straightened, and the spillway to be reconstructed so as to continue and safeguard the flow of water through ditch No. 1 and ditch No. 2. The cost was approximately $255,000.

Proceedings were then had by the County Commissioners for the assessment of benefits to defray the expenses thus incurred. The assessments of benefits were extended

to areas not embraced in the assessment districts of ditch No. 1 and ditch No. 2, as previously established, and resulted in the assessment of benefits now complained of, made against all the appellees, some of whom did and some of whom did not own land within the area originally assessed for the establishment of ditch No. 1 and ditch No. 2. When the present suits were commenced, notice had been given to the appellees of a tentative assessment of benefits to their land, and of a proceeding to be had to equalize benefits before final assessments for the cost of construction.

Both courts below found that the drainage ditch No. 1 and 2 was not a new project, but was in fact identical with the previously established ditches No. 1 and No. 2; that no new or additional drainage was established, and that the only purpose of the proceedings was to provide for the maintenance and repair of the previously established ditches by assessing the cost on tracts not included within the area originally assessed for their construction. For these reasons, among others, both courts held that the proceedings had by the Board of County Commissioners to apportion and assess benefits on land outside the original drainage districts were unauthorized and void under the statutes of South Dakota. In this we think they were right.

Section 8458 of the South Dakota Revised Code of 1919 provides that the Board of County Commissioners " may establish and cause to be constructed any ditch or drain; may provide for the straightening or enlargement of any water course or drain previously constructed, and may provide for the maintenance of such ditch, drain or watercourse . . ."

Section 8476 provides that the powers conferred for establishing and constructing drains " shall also extend to and include the deepening and widening of any drains

which have heretofore been or may hereafter be constructed," and that no proceedings shall be had under this section " except upon notice and the other procedure prescribed herein for the construction of drains."

The procedure prescribed by the South Dakota statutes embraces two distinct schemes or methods for carrying into effect the authority of the Board of County Commissioners. The one relates exclusively to the establishment and construction of proposed drainage; the other to assessments for further costs and maintenance of drainage already established. With reference to the establishment of proposed drainage, it is provided that the Board shall act only on petition of a landowner affected by the " proposed drainage " (§ 8459), and upon the filing of the petition the Board shall cause the " proposed route " of the drainage to be inspected and, if necessary, surveyed. (§ 8460.) It is required to hold a hearing on notice describing the proposed drainage (§ 8461), and after hearing the drainage " may be established " in accordance with the petition or the findings of the Board (§ 8462). After the establishment of the drainage, the Board is required to determine " the proportion of benefits of the proposed drainage," and to fix a time and place for equalization of benefits, on notice describing the land affected by the " proposed drainage "; and to state the proportion of benefits fixed for each tract, benefits being considered " such as accrue directly by the construction of such drainage or indirectly by virtue of such drainage being an outlet for connection drains which may be subsequently constructed." (§ 8463.) Following equalization of benefits as prescribed, the Board is authorized to make an assessment against each tract, " in proportion to benefits as equalized," for the purpose of paying damages and the cost of establishment, which are stated to include all the expenses " incurred or to be incurred that in any way contributed or will contribute to the establishment or con-

struction of the drainage." All assessments are made perpetual liens upon the tracts assessed.   (§ 8464.)

The only provisions contained in the statutes for equalization of benefits are those found in the sections referred to, which have to do with the establishment of proposed drainage.  By § 8477 all drains, when constructed, are in charge of the Board of County Commissioners, who are made responsible for keeping them open and in repair. The statutory provisions which deal with assessments for further costs of construction and for maintenance are found in §§ 8467 and 8470, the material portions of which are printed in the margin.*  It will be observed that there is no provision for the assessment or equalization of benefits in connection with the procedure provided in those sections for assessing for further costs of construction and maintenance.  No such provision is required; for by the

---

*§ 8467. Assessments for Further Costs.  At any time after the damages arising from the establishment and construction of such drainage are paid and the lands for such drainage are taken, assessments may be made for further costs and expenses of construction. If the contractors are required and agree to take assessment certificates or warrants for their services, assessments need not be made until the completion of the work when an assessment shall be made for the entire balance of cost of construction  .  .  .  and notice of such assessment shall be given by the board of county commissioners in all respects as provided for the first assessment.  And such assessment and the certificates issued thereon shall be in like manner perpetual liens upon the tracts assessed, interest-bearing and enforcible as such first assessment and certificates.  .  .  .  In any case, in the discretion of the board, several assessments may be made as the work progresses.  .  .  .

§ 8470. For the cleaning and maintenance of any drainage established under the provisions of this article, assessments may be made upon the landowners affected in the proportions determined for such drainage at any time upon the petition of any person setting forth the necessity thereof.  .  .  .  Such assessments shall be made as other assessments for the construction of drainage, certificates may be issued thereon and such assessments and certificates shall be liens .  .  .  in all respects as original assessments.  .  .  .

express terms of § 8467 the procedure for making assessments for the additional cost of construction is like that provided for the first assessment for construction (§ 8464) after the equalization of benefits has been had under §.8463; and by § 8470 assessments for maintenance are to be made " upon the land owners affected in the proportions determined for such drainage." Both sections clearly contemplate that assessments for additional construction and for maintenance are to be made upon those lands which are already embraced within the drainage project, and on which the proportion of benefits has been determined by equalization proceedings had after the establishment of the original project.

The statutes of South Dakota contain no provision for assessing the cost of reconstruction or maintenance of an existing drainage project except in the two sections last referred to, and they make no provision for assessing such costs upon lands not embraced within or assessed in connection with the drainage as originally established. Whether the cost of construction work actually done on ditch No. 1 and ditch No. 2 and involved in this litigation be regarded as additional costs of construction or as cost of maintenance, or partly one and partly the other, there is no statutory authority for assessing that cost on lands not included in the original drainage district.

By § 8489 it is provided that " If any proceeding for the location, establishment or construction of any drain . . . has been . . . voluntarily abandoned . . . for any cause, the board of county commissioners may nevertheless . . . locate a drain . . . under the same or different names and in the same or different locations from those described in the . . . abandoned proceeding under the provisions of this article." But the original proceedings for the establishment and construction of ditch No. 1 and ditch No. 2 were not abandoned, and the proceedings had for levying the assessments now

in question were not framed or conducted on that theory. They were consequently without authority in law and could not affect the rights of appellees.

While there are expressions in the opinion in *Gilseth* v. *Risty,* 46 S. D. 374, decided after these suits were begun, which, standing by themselves, might be regarded as supporting the view that the proceedings now in question were authorized by the statutes of South Dakota, the court clearly rested its decision upon other grounds. It is the duty of the federal courts, in suits brought in or removed to the districts courts, to decide for themselves all relevant questions of state law, and while they will follow the decisions of state courts as to the interpretation of a state statute, we do not think that the case of *Gilseth* v. *Risty, supra,* so clearly or decisively passed upon the question here involved as to control our decision. *Kuhn* v. *Fairmount Coal Co.,* 215 U. S. 349; *Barber* v. *Pittsburgh, &c. Railway,* 166 U. S. 83, 99; and see *Edward Hines Yellow Pine Trustees* v. *Martin,* 268 U. S. 458.

As our decision in these cases turns on the construction and application of the state law, we do not pass upon the constitutional questions raised. See *Bohler* v. *Calloway,* 267 U. S. 479, 489; *Chicago, G. W. Ry.* v. *Kendall,* 266 U. S. 94, 97–98. They are, however, questions of substance and sufficient to give the court jurisdiction to pass on the whole case. *Greene* v. *Louisville & Interurban R. R. Co., supra; Chicago, G. W. Ry.* v. *Kendall, supra; Bohler* v. *Calloway, supra.*

The objections to the exercise of equity jurisdiction in these cases require no extended comment. When the appellees filed their bills, the drainage project had been completed and construction warrants had been issued for the work done; benefits apportioned to the lands of the appellee had been tentatively fixed and notice of a hearing for the equalization of benefits had been given. The steps next in order after the hearing would have been the

assessment of costs of construction and the filing of copies of the assessment with the County Treasurer, which would have established a lien on the property assessed. (§ 8464.)   As the principal ground for appellees' suits was the invalidity of the whole proceeding and not merely inequality in apportionment of benefits, and as the effect of the proposed equalization would have been to bring the lands of appellees into the newly established drainage district and subject them to future assessments for construction costs and for maintenance, the threatened injury was imminent and the suits were not premature. The assessment, if made, would have established a lien on the appellees' property which would be a cloud on title—to say nothing of the fact that the effect of the pending proceeding would have been to subject their property to future assessments; hence the case was one for equitable relief unless there was a plain and adequate remedy at law.  *Ohio Tax Cases,* 232 U. S. 576; *Shaffer* v. *Carter,* 252 U. S. 37, 46; *Chicago, B. & Q. R. R.* v. *Osborne,* 265 U. S. 14.   The remedy by appeal to the state court under § 8469 does not appear to be coextensive with the relief which equity may give  In any event, it is not one which may be availed of at law in the federal courts, and the test of equity jurisdiction in a federal court is the inadequacy of the remedy on the law side of that court and not the inadequacy of the remedies afforded by the state courts.  *Smyth* v. *Ames,* 169 U. S. 466; *Chicago, B. & Q. R. R. Co.* v. *Osborne, supra.*

It does not appear that the state law affords a remedy by payment of the assessment and suit to recover it back, which, if it exists, can be availed of in the federal courts, *Singer Sewing Machine Co.* v. *Benedict,* 229 U. S. 481, 486, or that such remedy, if available, would not entail a multiplicity of suits.  It is not suggested that § 6826 of the state code, which permits suits to recover taxes and forbids injunctions to restrain their collection, has any

application to assessments for drainage. In *Gilseth* v. *Risty, supra,* the Supreme Court of the State evidently did not deem that section applicable, as it did not rely upon it in denying relief. The legal remedy under the state law being uncertain, the federal court has jurisdiction in equity to enjoin the assessment. *Dawson* v. *Kentucky Distilleries Co.,* 255 U. S. 288.

The objection that it was not shown that these cases involve the jurisdictional amount is unsubstantial. The court below found that the amount due on outstanding construction warrants was approximately $300,000 and that the tentative apportionment of benefits, if undisturbed, would result in assessments for amounts ranging from $6,000 to $50,000 against the lands of the appellees. As the substantial basis of the suits was want of jurisdiction in the Board of County Commissioners to make the apportionment and assessment, we think the jurisdictional amount was necessarily involved.

Appellees are not estopped to seek the relief which was granted because of any relations which they may have had to the proceedings or to the construction work which had been carried on before notice of the tentative apportionment of benefits. The decrees of the District Court, which remain undisturbed, enjoin the assessments and further proceedings only so far as they affect lands lying outside of the original assessment areas of ditch No. 1 and ditch No. 2. As none of the appellees could have had any notice of the proposal to assess lands lying outside of these areas, until the published notice of the apportionment of benefits, their previous conduct cannot estop them from seeking the relief granted. Other objections were made to the decrees below, but they are not of sufficient gravity to require notice here.

There is no diversity of citizenship in No. 99, the appellee in that case being the city of Sioux Falls, a South Dakota municipal corporation. Nor was any substantial

federal question raised by the bill of complaint in that suit. The power of the State and its agencies over municipal corporations within its territory is not restrained by the provisions of the Fourteenth Amendment. *Trenton v. New Jersey,* 262 U. S. 182; and see *Pawhuska* v. *Pawhuska Oil Co.,* 250 U. S. 394. The decree in that case must therefore be reversed, and the cause remanded with directions to dismiss the plaintiff's bill.

*No. 99 reversed and remanded.*
*Nos. 95, 96, 97, 98 and 100 affirmed.*