GLOBE GRAIN & MILLING CO. v. DE TWEEDE NORTHWESTERN & PACIFIC HYPOTHEEKBANK et al.

No. 7248.

Circuit Court of Appeals, Ninth Circuit.

Feb. 23, 1934.

GARRECHT, Circuit Judge, dissenting.

James H. De Vine, James A. Howell, David L. Stine, and Alfred W. Agee, all of Ogden, Utah, and Thomas D. Jones, C. W. Pomeroy, and Ralph H. Jones, all of Pocatello, Idaho, for appellant.

C. W. Poole, of Rexburg, Idaho, and F. L. Soule, of St. Anthony, Idaho, for appellees.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from a judgment for the sum of $8,663.88 for the conversion of 563,833 pounds of wheat. The plaintiffs and appellees are the mortgagees in the chattel mortgage given by A. E. Bott and his wife on a growing crop of wheat on certain lands in Teton county, Idaho, described in the chattel mortgage which was duly recorded in the office of the county recorder of that county. The wheat was harvested and put into bags by the mortgagor and delivered by him to the appellant for storage. Subsequently the appellant shipped the wheat to its warehouses in Utah for storage. The appellees claim that the appellant's act of shipping the wheat from its warehouse in Tetonia in Teton county, Idaho, to the warehouse of the Globe Warehouse Company in Ogden, was a conversion of the wheat. There is evidence to the effect that A. E. Bott, the mortgagor, was acting not only for himself but also for the mortgagees in delivering the wheat to the appellant. At the time of delivery of the wheat a receipt was issued for each truck load thereof, as follows:

"Tetonia, Idaho.

"Receiving record: The merchandise covered by this receipt is to be held at owners' risk (except by fire) for disposition by the owner until Sept. 22, inclusive, after which time Globe Grain & Milling Company will deliver this merchandise to Globe Warehouse Company at its elevators or warehouses in the State of Utah, and a public warehouse receipt will be issued therefor, subject to storage and other charges. If this merchandise is sold while on disposition to other than Globe Grain & Milling Company it will be subject to a charge of 3c per bushel, which includes loading out. For account of owner A. E. Bott.

"Globe Grain & Milling Co.
By Rulan Hanning, Weigher."

These receipts were subsequently delivered by the mortgagor, A. E. Bott, to Ross J. Comstock, who was the agent of the mortgagees.

Evidence as to the issuance of this receipt, and other evidence tending to show that the wheat was received with the understanding that it was held for both the mortgagor and the mortgagee, that the storage in Tetonia was temporary only, and that all parties agreed that the wheat should be shipped to Utah which was the customary method of handling wheat in that vicinity for sale on the market, was excluded by the trial court on the ground that the statutory law of Idaho

required that the consent of the mortgagees to the removal of the mortgaged property from the county of Teton must be in writing, and that any evidence other than written consent to such movement was therefore immaterial. Notwithstanding these rulings there was evidence tending to show that the plaintiffs-mortgagees had consented to the removal of the wheat from the county of Teton to the state of Utah, sufficient to take the case to the jury if such evidence were material. The trial court, however, at the conclusion of the trial, granted the motion of the appellees for an instructed verdict. The appellees depend upon section 6377 of the Idaho statutes, as amended in 1929 (Laws 1929, c. 250, § 5), which is as follows:

"Section 6377. When mortgaged personal property is * * * removed from any county where the mortgage is filed for record the validity and effect of the mortgage as against all persons is not affected thereby unless such property be removed by the written consent of the mortgagee into a county where the mortgage is not filed for record, in which event, the mortgage, except as provided in Section 3 hereof, is, as to the property so removed, void as against such purchasers or incumbrancers thereof in good faith and for value as acquire their rights and such creditors of the mortgagor as acquire specific liens on such property after such removal and prior to the time when the mortgage, acknowledged or proven as provided in Section 1 hereof, or a true copy thereof, verified by the mortgagee's affidavit as provided in Section 1 hereof, or certified as a true copy by the Recorder of a county where the same has been previously filed, is filed for record either:

"(a) In the office of the Recorder of the county or counties into which the property has been removed, or

"(b) In the office of a county recorder and the Secretary of State as provided in Section 2 hereof."

The purpose of this section is readily understood. It is to protect a mortgagee in case the mortgaged property is removed without his knowledge or consent from the county in which the chattel mortgage is recorded and to protect innocent purchasers or encumbrancers or attachment or judgment creditors from the lien of the mortgage where there is no evidence in the recorder's office or the office of the Secretary of State of the existence of the mortgage. The Supreme Court of Idaho said in Young v. Boise Payette Lumber Co., 45 Idaho, 671, 264 P. 873, 874,

in considering the purpose and effect of this statute: "It may well be that the Legislature, considering, as is suggested in Hoit v. Remick, supra [11 N. H. 285], that it was not among the purposes of the recording act to subject a bona fide mortgagee to the inconvenience, if not impracticability, of the constant vigilance and ceaseless watching which would be requisite to guard his interests if he is obliged to record his mortgage in every place to which the mortgagor might see fit to remove the property, and further considering that the mortgagee should not be subjected to the peril of being divested of his lien by oral testimony, deemed it a wise policy to require written evidence of his consent to a removal before he should be deemed to have waived his lien. In any event we could not, without extending the meaning of C. S. § 6377, beyond its plain terms and doing violence to its express language, hold that anything less than a written consent to a removal of the property would require the mortgagee to record the mortgage elsewhere than in the original county or to lose his lien in default thereof."

It should be noted, however, that the removal of the mortgaged property without the written consent of the mortgagee does not destroy the lien of the mortgage. Young v. Boise Payette Lbr. Co., 45 Idaho, 671, 264 P. 873, 874, supra. As the Supreme Court of Idaho further said in that case: "It has become settled law that in the absence of a specific statutory provision, requiring further recordation of a chattel mortgage upon the removal of mortgaged property, the record of a chattel mortgage in the county where it is required to be originally filed for record is constructive notice to all the world, and the mortgage is valid even though the mortgaged property may be removed to another county. Hammels v. Sentous, 151 Cal. 520, 91 P. 327, 12 Ann. Cas. 945, and note; Pease v. Odenkirchen, 42 Conn. 415; Smith & Co. v. McLean, 24 Iowa, 322; Elson v. Barrier, 56 Miss. 394; Barrows v. Turner, 50 Me. 127; Feurt v. Rowell, 62 Mo. 524; Grand Island Banking Co. v. Frey, 25 Neb. 66, 40 N. W. 599, 13 Am. St. Rep. 478; Hoit v. Remick, 11 N. H. 285; Kanaga v. Taylor, 7 Ohio St. 134, 70 Am. Dec. 62; Jones, Chattel Mortgages (5th Ed.) § 260; 11 C. J. 529; Bailey v. Costello, 94 Wis. 87, 68 N. W. 663."

Section 6377, supra, expressly provides that the removal of mortgaged property shall not affect the validity and effect of the mortgage as against all persons "unless such property be removed by the written consent

of the mortgagee." We call particular attention to the rule as stated in section 260 of Jones on Chattel Mortgages (5th Ed.) above cited by the Supreme Court of Idaho in Young v. Boise Payette Lbr. Co., supra, as follows:

"§ 260. The removal of a mortgagor from the town or county in which he resided when the mortgage was executed, and where it was duly recorded, and the taking of the mortgaged property with him, does not invalidate the record of the mortgage, or necessitate the recording of it again in the town or county to which he has removed. The object in requiring a record of the mortgage is to give publicity to it, and to provide a source of information common to all persons, so that they may determine, with some degree of facility, convenience, and certainty, the question of title to the property, whenever they may be interested to know it; while at the same time it is not among the purposes of the recording acts to subject a bona fide mortgagee to the inconvenience of the constant vigilance and ceaseless watching which would be requisite to guard and secure his interests, if he were obliged to record his mortgage in every town into which the mortgagor might see fit to remove with the property. If he were required to do this, his security would be well-nigh worthless; for before he could do this, a creditor of the mortgagor might seize the property by process of law, or the mortgagor himself might pass the title to it by way of sale to an innocent purchaser.

"In like manner, if the mortgage be required to be recorded in the county of the mortgagor's residence, his removal with the property to another county does not necessitate the recording of the mortgage again in the county to which he removes. ·· * *"

The general rule with reference to harvested crops is stated as follows in Jones on Chattel Mortgages, § 69: "Gathered crops may be identified as the same property described in a mortgage as growing crops."

The Supreme Court of Idaho has applied this rule in Forbush v. San Diego Fruit & Produce Co., 46 Idaho, 231, 266 P. 659, 665, where the court stated: "The lien would also continue though the mortgaged crops had been tortiously removed and disposed of without the consent of either the mortgagor or the mortgagee," citing section 69, supra, of Jones on Chattel Mortgages (5th Ed.). Thus, wheat harvested, threshed, removed, and sold in the market may be identified as the same covered by a mortgage of ten acres

of growing wheat. The mortgage vested the title of the growing wheat in the mortgagee, and the recording of it created a constructive notice as against a subsequent purchaser or attaching creditor. The lien follows the grain after severance and removal and the money after sale whether such removal be by the mortgagor or by the third person or whether the removal be legal or tortious. The change which it underwent did not change the property so as to divest the title of the mortgagee or to prevent its identification.

The appellees state their position thus:

"Our pleading is based on our rights under our statute against removal of mortgaged property by third persons without our written consent. ∴ * * It was plaintiff's theory upon the trial, and the court adopted this theory, that the appellant could not excuse removal of the mortgaged property without written consent from their mortgagees. * * *

"The fundamental thing overlooked by counsel in this matter, is that the mortgage lien and this statutory right are not identical; there is more than a mere 'lien' involved.

"If there is no removal of the mortgaged property from the county where mortgaged, this statute never springs into action, but the 'lien' still exists. The 'lien' would continue in the foreign jurisdiction, even if the statute did not exist. This discloses that the statute confers a right additional to the 'lien' of the mortgage; therefore, when they admit the continuance of the 'lien', they have not met the whole issue—the statutory right against removal still stands. We are here standing upon that right, and by the above admission appellant confesses our case."

As we understand the position of the appellees, they concede that the mortgage lien followed the mortgaged property into the state of Utah. The general rule is that where mortgaged property is moved from one state to another the mortgagee does not lose his lien unless the rights of third parties have intervened. The Supreme Court of Idaho has followed this general rule in Smith v. Consolidated, etc., Co., 30 Idaho, 148, 163 P. 609, 610; the rule was thus stated: "The question presented by this appeal is: Does this mortgage constitute a lien upon the property which is enforceable against respondent? The great weight of judicial opinion is that, by reason of comity between states, if personal property, situated in a given state, is there mortgaged by the owner and the mortgage is duly executed and recorded

as by the local law required so as to create a valid lien, and if the property is thereafter removed into another state and is there sold to a purchaser without knowledge of the incumbrance, such purchaser takes title subject to the lien of the mortgage, although it has not been recorded in the latter state, and this is particularly true when the removal is accomplished without the knowledge or consent of the mortgagee. 6 Cyc. 1089; Jones on Chattel Mortgages (5th Ed.) § 260a; 5 R. C. L. 399, § 21; Shapard v. Hynes, 104 F. 449, 45 C. C. A. 271, 52 L. R. A. 675; Kanaga v. Taylor, 7 Ohio St. 134, 70 Am. Dec. 62; Ord Nat. Bk. v. Massey, 48 Kan. 762, 30 P. 124, 17 L. R. A. 127; Handley v. Harris, 48 Kan. 606, 29 P. 1145, 17 L. R. A. 703, 30 Am. St.·Rep. 322; Hornthal v. Burwell, 109 N. C. 10, 13 S. E. 721, 13 L. R. A. 740, 26 Am. St. Rep. 556; Smith v. McLean, 24 Iowa, 322; Keenan v. Stimson, 32 Minn. 377, 20 N. W. 364."

It is clear that appellees do not claim that they lost their mortgage lien by reason of the removal of the wheat to Ogden, Utah, but that they claim that such removal without their written consent was such an·invasion of their rights as constituted a conversion of the property although such removal was consented to by them, and this, in part, because it is claimed that the statute requiring consent for such removal becomes a part of the mortgage. In this regard appellees state:

"Appellant overlooks the fundamental principle that the statute which they seek to avoid, became instantly, upon their execution, a part of the mortgages of these appellees, and was a constant admonition to the defendant and a warning against removal. It was in our mortgages by operation of law. Certainly the defendant had no way to deprive us of its effect. * * *

"What right of the mortgagee is it that gives rise to his cause to charge another with conversion? It is the right of security—a property right—and the statute, for his better security, forbids the removal of the property, from the county without his written consent."

It would be a strange thing indeed if the mortgagees could authorize or direct or consent to the removal of the wheat for proper storage or protection· or sale and then claim a conversion by the third party because that authority or direction or consent was not in writing. Before discussing this claim it should be observed that the statute in question does not purport to prohibit a removal without the mortgagee's written consent. It merely purports to protect him in his lien where he has not consented.

■ The claim presented is not new and has been frequently ruled upon adversely to the appellees' contention. It is a fundamental rule that a party may waive a benefit of a provision of a statute or of a contract enacted or provided for his protection. This principle is most frequently applied as to policies of insurance companies in determining the effect of their insurance policies. It is applicable as well to statutory provisions similar to those here involved. Hardwick Bank & Trust Co. v. McFarland, Trustee (C. C. A.) 43 F.(2d) 807; First Nat'l Bk. & Trust Co. v. Stock Yards Loan Co. (C. C. A.) 65 F.(2d) 226.

It is difficult to distinguish this case in principle from those cases dealing with the effect of statutes prohibiting the sale of mortgaged personal property without the written consent of the mortgagee. In such case it has been held that where the mortgagee has verbally consented to the sale the title passes. In Jones on Chattel Mortgages (5th Ed.) § 456, it is said: "Although a sale of the mortgaged property by the mortgagor without the consent in writing of the mortgagee, be prohibited by statute, if the mortgagee consent verbally to a sale, such sale is sufficient to pass the title to the purchaser in possession and the mortgagee cannot maintain trover for the property," citing Gage v. Whittier, 17 N. H. 312.

The same rule is stated in 11 Corpus Juris 626, § 340. The reason for the rule is stated by the St. Louis Court of Appeals in Randol v. Buchanan, 61 Mo. App. 445. That case is one where the mortgagee brought a replevin suit against the vendee of the mortgaged property. There was evidence that the mortgagor had sold the property with his oral, but not with his written, consent. The trial court instructed the jury that the title of the cattle did not pass by the attempted sale by the mortgagor "unless the sale was made with the written consent of the" mortgagee. The appellate court said: "This is a misconception of the purpose and scope of the statute. It does not declare such a sale void or prohibit it, but it merely provides that in such a case the mortgagor may be punished. The intention of the legislature was to protect the mortgagee against the fraudulent acts of the mortgagor in removing and selling the property at distant points, and also to protect innocent third parties who

might, under such circumstances, be inclined to purchase it."

The Supreme Court of Kansas, in Reese v. Kapp, 82 Kan. 304, 108 P. 96, held that a sale of mortgaged property by the mortgagor with the oral consent of the mortgagee conveyed the title notwithstanding a sale without the written consent of the mortgagee was penalized by statute. See, also, Chase v. Willard, 67 N. H. 369, 39 A. 901; Colston v. Bean, 77 Vt. 40, 58 A. 795.

■■ The appellees rely upon a decision by the Supreme Court of Maine (Rowe v. Green, 116 Me. 94, 100 A. 145), but the statute there involved expressly established a rule of evidence, namely, that no oral evidence should be received to establish the consent of the mortgagee to a sale of the mortgaged property. This decision has no application here as the statute here involved (Idaho C. S. § 6377) does not purport to establish a rule of evidence. Evidence of oral consent was admissible in the case at bar; the only legal question involved in the matter is as to the effect of an oral consent as contradistinguished from a written consent. Also it should be observed that section 6377 of the Code of Idaho deals with the removal of mortgaged personal property from the county in which it was situated to another county of Idaho. While it is not expressly stated that its operation is confined to removal from county to county in Idaho, the provision in reference to the recording of the mortgage in the county to which the property has been removed and the taking possession of the property clearly indicate that the purpose of the Legislature was to deal with the removal from county to county it does not purport to regulate the rights of parties where there has been a removal from the state. In such a case the rights of the mortgagee are established in the state to which the property is removed by the principle of comity. Smith v. Consolidated, etc., Co., 30 Idaho, 148, 163 P. 609, supra; Moore v. Keystone Driller Co., 30 Idaho, 220, 163 P. 1114, L. R. A. 1917D, 940. In the latter case, Moore v. Keystone Driller Co., the Supreme Court of Idaho limited the rule that the mortgagee retained his lien after removal to another state, to removals without the consent of the mortgagee, where the right of the mortgagee to his lien was in conflict with the right of an innocent purchaser who had purchased the property in the state of Idaho without knowledge of the existence of the mortgage lien. In dealing with the consent of the mortgagee to the removal from the state of Missouri to the state of Idaho, the Supreme Court of Idaho said:

"He should be and is deemed to have waived his lien against such innocent parties upon the principle that where one of two persons must suffer by reason of the wrongful act of a third, the injury must be borne by him by whose conduct the wrongful act has been made possible.

"The following are authorities holding that the rule of comity does not apply where the removal was with the consent of the mortgagee: Jones v. North Pacific Fish & Oil Co., 42 Wash. 332, 84 P. 1122, 6 L. R. A. (N. S.) 940, 114 Am. St. Rep. 131; Blythe v. Crump, 28 Tex. Civ. App. 327, 66 S. W. 885; Greene v. Bentley, 114 F. 112, 52 C. C. A. 60; Pennington County Bk. v. Bauman, 87 Neb. 25, 126 N. W. 654; Newsum v. Hoffman, 124 Tenn. 369, 137 S. W. 490."

In the case at bar the possession of the warehouse company was in recognition of and in subordination to the rights of the mortgagor and mortgagee and was in legal effect the possession of the mortgagor and mortgagee. Hence, no rights of innocent purchasers or incumbrancers could be involved because the possession of the warehouseman was notice of the rights of the mortgagor and mortgagee. See, also, discussion in L. R. A. 1917D, page 942 note.

■ The question involved in the case at bar is to be determined according to the statutory law of Idaho as construed by the Supreme Court of Idaho. The legislation of Idaho with relation to chattel mortgages is not novel or unique, and the decisions of the Supreme Court of Idaho accord with and are in part based upon decisions from other states upon the same matter. For that reason our citation of decisions from other jurisdictions is deemed appropriate.

Appellant relies strongly upon the claim that its position in the matter is that of a bailee for the mortgagor and mortgagee and that its rights and obligations are to be measured by its contract of bailment. We do not deal with that contention because the trial court excluded some of the evidence bearing upon that contention and predicated its instruction to the jury to return a verdict in favor of the appellee solely on the theory that the removal of the wheat to Utah without the written consent of the mortgagees was ipso facto a conversion of the property.

Judgment reversed, and the cause remanded for a new trial.

424

GARRECHT, Circuit Judge (dissenting).

I cannot concur in the majority opinion. The decision in this case involves the construction of a statute of the state of Idaho. The Supreme Court of the State of Idaho has construed that statute. The judge of the District Court properly followed that construction and his ruling should be upheld. The pertinent part of section 6377 of the Idaho statute, as amended in 1929 (Laws 1929, c. 250, § 5), is as follows: "When mortgaged personal property is * * * removed from any county where the mortgage is filed for record the validity and effect of the mortgage as against all persons is not affected thereby unless such property be removed by the written consent of the mortgagee. * * * "

It is conceded that the entire controversy, so far as appellant is concerned, revolves about the question, whether parol evidence was admissible to prove that plaintiffs consented to the removal of the wheat. The trial court held that oral evidence tending to prove consent was incompetent under the statute in question.

Appellant takes the position, first, that the statute has no application, and, second, that if it did, that the issuance of the receipts or tickets referred to in the majority opinion, coming into the possession and being held by plaintiffs was a sufficient compliance. Appellant further contends that Bott, who received the tickets, was acting for the plaintiffs and the transaction was in effect as if the wheat had been delivered to the warehouse by the mortgagees, and these scale tickets or receipts accepted by them, and that the appellant thus became bailee for plaintiffs, and the existence of the chattel mortgages would have no bearing on the case. It was also contended that by the testimony erroneously excluded it could be shown that Comstock, the agent of the plaintiffs, was directly concerned in the storing of this wheat, and thus appellant was the bailee of the plaintiffs, and that said agent orally consented to the removal of the wheat and therefore the statute in relation to chattel mortgages had no application.

It is not disputed that Bott was the owner of the wheat upon which he had given two chattel mortgages to these plaintiffs. He delivered the wheat to the warehouse as the owner of the wheat with the consent of the agent of the mortgagees, and received the scale tickets therefor. The testimony of plaintiffs was to the effect that this wheat was to be piled separately and remain in the warehouse in Tetonia until sold, and both Bott and Comstock deny any consent to its removal. The claim of appellant is that there was no understanding that the wheat should remain in the Tetonia warehouse, and that the wheat tickets themselves, which were received by Bott, provided for the removal of all of said wheat by October 13, 1929, and that these tickets being memorandums in writing delivered to Bott, and which afterwards came into the hands of plaintiffs' agent, in effect constituted consent in writing to the removal of the wheat.

Appellant further contended that it was the bailee of the plaintiff, and that by reason of this relationship that a valid parol contract for a change of the place of bailment to any place within or without the state could be entered into, and that the statute concerning chattel mortgages, which requires the consent of a party to the removal of the wheat to be in writing, had no application to the case at bar.

The District Court held that conceding the relationship between Bott and appellant to be that of bailee and bailor, this relationship did not extend to appellees. Appellant was not sued as a bailee but for conversion of the mortgaged property by removing it out of the state without the written consent of the mortgagees.

It will be observed that all of these tickets were issued by appellant and on their face A. E. Bott, not the plaintiffs, is designated as the owner of the wheat. The record shows that these tickets were not delivered to plaintiffs until October 28, 1929, or until the owners' right of disposition would have lapsed. To accept the contention urged by appellant would in effect hold that Bott, the mortgagor, was the agent of the mortgagee to effectuate the release of the mortgage by accepting the wheat tickets and subsequently delivering them to the agent of the mortgagees. Such a conclusion is not admissible. These instruments were issued by appellant and were in no sense equivalent to the written consent of the mortgagees.

The transaction between Bott and appellant did not effectuate the satisfaction or waiver of the chattel mortgage; therefore appellant's act in transporting the wheat outside of the county without the written consent of the mortgagees constituted conversion. Further, appellant's answer admits that it sold the wheat on or about the 18th day of April, 1931. The tickets were issued to Bott, the mortgagor, as the owner, and any arrangements made between him and appel-

lant concerning the removal of the wheat from the state were not binding on the mortgagees, unless consent of appellees was shown to be in writing. When the appellant removed the wheat from Idaho to Utah, it was a wrongful act in violation of the rights of the plaintiffs, and the removal of their security in defiance of their rights was a conversion. Carver v. Ketchum (Idaho) 26 P.(2d) 139; 26 R. C. L. 1098, § 3; 27 R. C. L. 1000, § 61; 1005, 1006, § 67.

Conversion is any distinct act of dominion wrongfully exerted over another's personal property, in denial of, or inconsistent with his rights therein. United States Zinc Co. v. Colburn, 124 Okl. 249, 255 P. 688; Pine & Cypress Mfg. Co. v. American Engineering & Construction Co., 97 W. Va. 471, 125 S. E. 375; Suzuki v. Small, 214 App. Div. 541, 212 N. Y. S. 589; Schlieff et al. v. Bistline et al., 52 Idaho, 353, 15 P.(2d) 726.

Much of the majority opinion is devoted to a discussion intending to show that the purpose of the statute under consideration was merely to continue the lien of the mortgage, and that the lien had not been lost. As the opinion fully demonstrates that without such a statute the lien of the mortgage would have continued, notwithstanding the removal of the wheat from Idaho into Utah, this could not have been the purpose of the enactment of the statute. Moreover, this question of foreclosure was not a matter of controversy, it being conceded that this is not a suit to foreclose the mortgage lien, but an action whereby appellees seek to recover for the unlawful conversion of property by reason of having been deprived of rights which they had in the wheat, and which were lost to them by the removal of the wheat out of the state of Idaho. Under the authorities above cited this clearly constituted a conversion.

Appellees' right to sue as mortgagees is not denied by appellant, but it claims: "That the complaint does not state facts sufficient to constitute conversion; that the evidence was not sufficient to show it, and, that in any event, inasmuch as the removal of the wheat from the State of Idaho was the only conversion relied on, the consent to the removal on the part of the mortgagees would prevent the removal from constituting a conversion."

The controversy on these issues at the trial, as here, narrowed down to the question as to whether this consent could be shown by oral testimony.

In passing on a statute similar to that of Idaho here under discussion the Supreme

Court of Maine, in the case of Rowe v. Green, 116 Me. 94, 100 A. 145, squarely upholds the ruling of the District Court. The majority opinion seeks to distinguish this case with the statement that the statute there expressly established a rule of evidence. That this was likewise the purpose of the Idaho statute is plain from its reading, and this is the construction that has been placed upon it by the Supreme Court of that state, and that construction was binding on the District Court and should be followed here.

The majority opinion suggests that this section 6377 of the code of Idaho is concerned only with the removal of mortgaged personal property from one county to another within the state of Idaho, and that it was not the purpose of the Legislature to extend the rule to parties who removed the mortgaged property entirely from the state. This condition but augments the evil, and any reason for such a distinction is not apparent, and the language of the statute is to the contrary. The Supreme Court of Idaho, in Young v. Boise Payette Lumber Co., 45 Idaho, 671, 264 P. 873, 874, negatives any such implication. There the court said: " * * * It may well be that the Legislature, considering, as is suggested in Hoit v. Remick, supra [11 N. H. 285], that it was not among the purposes of the recording act to subject a bona fide mortgagee to the inconvenience, if not impracticability, of the constant vigilance and ceaseless watching which would be requisite to guard his interests if he is obliged to record his mortgage in every place to which the mortgagor might see fit to remove the property, and further considering that the mortgagee should not be subjected to the peril of being divested of his lien by oral testimony, deemed it a wise policy to require written evidence of his consent to a removal before he should be deemed to have waived his lien. * * * "

From this opinion it is quite clear that not only does the Idaho court hold that this statute establishes a rule of evidence, but it furthermore excludes any supposition that the removal of the property from the state, whereby all the inconveniences pointed out are increased, was not intended to be covered by its provisions.

The majority opinion cites for its support Jones on Chattel Mortgages (5th Ed.) § 456; 11 C. J. 626, § 340, and several cases to be separately noticed hereafter. The quotation of Jones on Chattel Mortgages is as follows: "Although a sale of the mortgaged property by the mortgagor without the con-

sent in writing of the mortgagee be prohibited by statute, if the mortgagee consent verbally to a sale, such sale is sufficient to pass title to the purchaser in possession, and the mortgagee cannot maintain trover for the property." Citing Gage v. Whittier, 17 N. H. 312.

The rule as stated in 11 C. J. 626, § 340 is: "The mortgagee's consent to a sale of the mortgaged property may be given verbally, although the mortgage forbids sales without his written consent, and notwithstanding a sale by the mortgagor, without such written consent, is, by statute, made a misdemeanor."

To sustain this text is cited Shearer v. Babson, 1 Allen (Mass.) 486; also, the case of Randol v. Buchanan, 61 Mo. App. 445. The case of Shearer v. Babson did not involve a statute. In that case the mortgage contained a provision that if the mortgagor should attempt to sell the property without notice to the mortgagee and without his written consent, the latter might take immediate possession of it. The court held that if the question had arisen between the mortgagor and mortgagee as to their respective rights under the proviso in the mortgage, parol evidence would have been inadmissible to show a different agreement than that expressed in the written contract, but that this question was not involved as defendant was not a party to the instrument and not bound by its stipulation.

Here appellees correctly contend that the public statute enacted by the state of Idaho was binding upon all as an inherent part of all mortgage contracts, and affecting all transactions in relation thereto. Dighton v. First Exchange Nat. Bank, 33 Idaho, 273, 192 P. 832; 13 C. J. 560, § 523; Kitchen v. Schuster, 14 N. M. 164, 89 P. 261.

In Randol v. Buchanan, 61 Mo. App. 445, the statute involved was a criminal statute, making it a misdemeanor for the mortgagor to sell mortgaged property without the written consent of the mortgagee. The court pointed out that there was a misconception of the purpose and scope of the statute; that it was not operative upon the sale of the property, but merely provided that in a case of its violation by the mortgagor that he be punished. In Idaho there is also such a statute which makes it a criminal offense for a mortgagor to dispose of mortgaged property, but section 6377 of the Idaho code is not a criminal statute, but it is a statute of evidence relating to the removal of mortgaged personal property from any county, and the statute explicitly holds that "the validity and effect of the mortgage as against all persons is not affected thereby, unless such property be removed by the written consent of the mortgagee." The provisions of the statute apply to all persons, not merely to the mortgagor.

The majority opinion also cites as authority for its position Reese v. Kapp, 82 Kan. 304, 108 P. 96; Chase v. Willard, 67 N. H. 369, 39 A. 901, and Colston v. Bean, 77 Vt. 40, 58 A. 795, 796. In Reese v. Kapp the statute involved was likewise a criminal statute which was held not to affect the question presented. There the evidence showed that plaintiff, the mortgagor, with the oral permission of the mortgagee, had sold cattle to defendant, who as part payment had issued a check for $1,000 which was intended to and would have satisfied the mortgage, if defendant had not stopped payment of the check. Defendant claimed as a reason for his stopping payment of the check that he had just been informed of the existence of the mortgage. The court ruled that having stopped the payment of the check, which would have otherwise been used to satisfy the payment of the mortgage, he could not justly complain of its existence.

The case of Chase v. Willard, supra, was also a case which likewise did not involve the rights of the mortgagee. A purchaser from a mortgagor with the consent of the mortgagee had bought property under a warranty that it was free from incumbrances, sought to rescind the sale. The question of evidence, that the consent of the mortgagee was required to be in writing, was not raised. The court merely held that this statute did not prevent the title from passing, which rule is not questioned here. The court held that the purchaser received the title he contracted for, saying: "It is not understood that a technical breach of a contract of warranty in an immaterial respect, resulting in no appreciable damage to the vendee, authorizes him to repudiate the contract, and exercise the remedial power of rescission."

The case of Colston v. Bean, likewise, was a controversy between a purchaser and the mortgagor; the rights of the mortgagee being in no wise involved. There the court held that the statute providing that a mortgagor of personal property shall not sell the same without the written consent of the mortgagee indorsed on the mortgage and on the record thereof, and a statute providing for the punishment of the mortgagor for violating such section by fine etc., have no application to an action brought by the purchaser of

mortgaged chattels against the mortgagor on the ground that the sale was induced by the mortgagor's fraudulent statement that the property was free from incumbrances. The court held that this was an action for fraud, in no wise dependent upon the statute. Continuing, the court said: " * * * We hold that the charge to the effect that, in no view of the evidence, could verbal permission to sell, given to the mortgagor, avail the defendant, was erroneous. This holding in this action on the case for fraud does not in any way touch the question of what constitutes a defense to a proceeding under the statute."

But even if these decisions from other states were contrary to the holding in this case, they should not be followed, because they are in conflict with the interpretation given by the Supreme Court of Idaho to the statute of that state here invoked.

This was the position of the District Court, and was made clear in the ruling expressed in the following language:

" * * * The statutes of the state prohibit the removal of mortgaged property from the county where it is situate without the written consent of the mortgagee, and the chattel mortgage here provides that the plaintiffs, mortgagees, can take possession of the mortgaged property whenever a breach of the conditions of the mortgage occurs. * * *

"This statute in effect required written consent to be obtained from the mortgagee before mortgaged property could be removed from the county where it was situate at the time of the execution of the mortgage. The 1929 statute, without change, will be found in section 44-1007, Idaho Codes Annotated 1932, and reads: 'When mortgaged personal property is removed from any county where the mortgage is filed for record the validity and effect of the mortgage as against all persons is not affected thereby unless such property be removed by the written consent of the mortgagee into a county where the mortgage is not filed for record * * *.' The Supreme Court of the State has on numerous occasions construed these provisions of the statute, and the court has consistently held that before mortgaged property can be removed from the county where it was situate at the time of the execution of the mortgage, written consent must be given by the mortgagee.

"In the case of Young v. Boise Payette Lumber Co., 45 Idaho, 671, 264 P. 873, the Supreme Court of the State, when in construing section 6377, Compiled Statutes, said:— 'In any event, we could not, without extending the meaning of C. S. § 6377, beyond its plain terms and doing violence to its express language, hold that anything less than a written consent to a removal of the property would require the mortgagee to record the mortgage elsewhere than in the original county or to lose his lien in default thereof.'

"And again the Supreme Court of the State held in the late case of Forbush v. San Diego Fruit, etc., 46 Idaho, 231–240, 266 P. 659, where an action was brought for conversion of a crop of potatoes covered by a mortgage and judgment for the mortgagee was affirmed, and after reviewing many of the decisions of that court, it is said: 'The cases cited above, it is true, are concerned with the right to bring an action in claim and delivery. But even more cogent reasons compel the conclusion that the mortgagee can likewise protect his interest by bringing an action in conversion.'

"In the case of Averill Machinery Company et al. v. Vollmer-Clearwater Company, Ltd., 30 Idaho, 587, 166 P. 253, where the defendant wrongfully and unlawfully converted a portion of the mortgaged property to his own use, the Supreme Court of the State of Idaho upheld the right of the mortgagee to sue in conversion. Adamson v. Moyes, 32 Idaho, 469, 184 P. 849.

" * * * This property was moved into the State of Utah in violation of the statute. This statute says you have got to get the written consent of the mortgagee to move the property, and the Supreme Court has put life into it and said what was meant. The mortgagee could not be inconvenienced, running from county to county, especially to another state, in protecting his property. That is the situation here. The defendant moved that grain from where it was situated in storage in the state of Idaho into Utah, without compliance with the statute by getting written consent of the mortgagee. It is unlawful because the Legislature said it is unlawful. The property became converted, and conversion is nothing else but the unlawful taking of property, and that is what has been done here, so far as the record shows. * * * The Supreme Court says the mortgagee shouldn't be subjected to the inconvenience of running from one county to another in protecting its property rights. The removal of this property was unlawful, and in

violation of the rights of these mortgagees. It was a conversion and nothing else. That is the interpretation I place upon this statute, and if it doesn't mean that it doesn't mean anything at all."

The court applying to section 6377, Compiled Statutes of Idaho, the interpretation given by the Supreme Court of the state, ruled that the mortgagees' consent to the removal of the mortgaged property was required to be in writing, and appellant's attempt to show that there was an oral understanding which overcame the statute was properly excluded. This statute was evidently designed to meet just such cases as the present. It is consistent with sound public policy. The validity of the mortgage and under the statute the inadmissibility of the oral evidence to relieve against it determine the rights of the parties here. Rowe v. Green, 116 Me. 94, 100 A. 145. It was clearly intended that any claim that a chattel mortgage had been waived or abrogated by the mortgagee to give it effect should be in writing.

"The policy of such a statute is for the Legislature to determine. It may well be that the Legislature * * * further considering that the mortgagee should not be subjected to the peril of being divested of his lien by oral testimony, deemed it a wise policy to require written evidence of his consent to a removal before he should be deemed to have waived his lien." Young v. Boise Payette Lumber Co., 45 Idaho, 671, 264 P. 873, 874.

This court has repeatedly held that decisions of the highest court of a state construing a statute of that state are binding on the federal tribunals. Ruddock et al. v. Bloedel Donovan Lumber Mills (C. C. A.) 28 F.(2d) 684; Chicago, M., St. P. & P. R. Co. v. Campbell River Mills Co. (C. C. A.) 53 F.(2d) 69; Sanger v. Lukens (C. C. A.) 26 F.(2d) 855.

The District Court in giving effect to the statute of Idaho as construed by the Supreme Court of Idaho conformed to these prior decisions of this court, particularly giving effect to the admonition of this court that the construction of a state law by the state supreme court is binding on a federal court sitting within that state. Wallace Ranch Water Co. v. Railroad Commission of California (C. C. A.) 47 F.(2d) 8.

The decisions of the Supreme Court of the United States also make it clear that federal courts should refrain from any attempt to interfere with the exclusive right of the state Supreme Courts to interpret state statutes, having gone to the extent of modifying their own opinion.

The Supreme Court of the United States, in the case of Chicago, etc., R. R. v. Risty, 276 U. S. 567 at page 570, 48 S. Ct. 396, 398, 72 L. Ed. 703, says: "Since our decision in Risty v. Chicago, Rock Island & Pacific Ry., supra [270 U. S. 378, 46 S. Ct. 236, 70 L. Ed. 641], the Supreme Court of South Dakota in State v. Risty, 51 S. D. 336, 213 N. W. 952, has had occasion to pass upon the construction and the constitutionality of the South Dakota drainage statutes. Taking a different view from that of this court and the lower courts in Risty v. Chicago, Rock Island & Pacific Ry., supra. * * * This construction of the state statutes by the highest court of the state we, of course, accept. * * *"

Again in the case of Sioux County, Neb., v. Nat. Surety Co., 276 U. S. 238, at page 240, 48 S. Ct. 239, 72 L. Ed. 547: "The correctness of this interpretation of the Nebraska decisions is questioned here, but all doubts on that point have been set at rest by a later decision of the state court. In Scotts Bluff County v. First Nat. Bank [115 Neb. 273], 212 N. W. 617, decided since the entry of judgment below, the Supreme Court of Nebraska held that the statute does not have the effect asserted, and that within the amount of the bond a county may recover trom the surety the full amount of the deposit, even though it exceed 50 per cent. of the authorized capital of the depository.

"We accept this construction of the statute and accordingly set aside the conflicting interpretation of the court below, even though it antedated the determination by the state court. * * *"

The proposed evidence offered by appellant to prove the oral consent by appellees to the removal of the wheat was properly excluded, and there was no error in the instructions of the court.

The District Court should be affirmed.