THE SPRINGFIELD SANITARY DISTRICT, Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

Fourth District   No. 13599

Opinion filed May 16, 1977.

Giffin, Winning, Lindner, Newkirk, Cohen, Bodewes & Narmont, of Springfield (Robert S. Cohen and James P. Baker, of counsel), for petitioner.

William J. Scott, Attorney General, of Springfield (John Van Vranken, Assistant Attorney General, of counsel), for respondents.

Mr. JUSTICE MILLS delivered the opinion of the court:

The EPA denied, the PCB affirmed, and we agree.

The Springfield Sanitary District applied to the Environmental Protection Agency for a permit to construct a pumping station. The agency denied the permit application and the decision was affirmed by the Pollution Control Board. The district seeks review in this court. We affirm.

The purpose of the pumping station sought to be constructed would be to pump the contents of the district's West Side Interceptor into the Oak Knolls combined sewer during periods of wet weather flow in both the West Side and Oak Knolls sewers. The agency denied the permit on the ground that the pumping would cause a "sanitary sewer overflow" in violation of Rule 602(b) of the Water Pollution Control Regulations of the Pollution Control Board. The position of the EPA was that: (1) the Oak Knolls combined sewer already overflows in periods of wet weather; (2) the pumping station would operate in wet weather to transport flow from the West Side Interceptor to the Oak Knolls combined sewer; and (3) the West Side Interceptor is a "sanitary sewer." Thus the pumping station would cause a "sanitary sewer overflow." The district does not dispute that the Oak Knolls sewer already overflows nor that the pumping station would add more flow at critical times. It does contend, however, that the West Side Interceptor is not a "sanitary sewer" but a "combined sewer." If the Interceptor is not a "sanitary sewer," the pumping station could not cause a "sanitary sewer overflow" prohibited by the regulations.

Essentially, the facts of this case (that is, the characteristics of the sewers involved and the effect of the pumping station) are undisputed. The legal effect of the facts and their interpretation as applied to the regulations become a matter of law for this court's determination. *B.F. Gump v. Industrial Com.* (1952), 411 Ill. 196, 103 N.E.2d 504.

The PCB has defined both a "sanitary" and a "combined" sewer. A " 'sanitary sewer' means a sewer that carries wastewater together with incidental land runoff." A " 'combined sewer' means a sewer receiving both wastewater and land runoff." (Ill. Pollution Control Board Rules and Regulations, ch. 3, R. 104.) The district contends that the definitions classify sewers on the basis of *actual flow composition.* The composition of the West Side Interceptor during periods of wet weather flow is over 90% storm water and other infiltration and sewage.

The EPA contends that the rule defines sewers according to *design intent.* Various EPA engineers testified that the Interceptor was a "sanitary sewer" because it was so designed. The overflow problems experienced by the system occur because of the age of the system, the consequent degeneration of its components and excessive infiltration of ground or storm water.

Essentially the only difference between the definitions is whether the land runoff is "incidental" or not. Both parties find comfort and solace in the word. One meaning of the word is occurring by chance or without intention. Another meaning is subordinate or secondary.

The PCB agreed with the EPA's meaning of the definition. One reason stated in the opinion is that to hold otherwise would allow any sanitary district to circumvent the prohibition of sanitary sewer overflows by the district's failure to maintain its sewer system—thereby allowing a sewer to be defined as "combined" because of excessive and unintentional infiltration. *Design intent* provides a clear, continuing classification of a sewer or sewer system. The PCB also noted that such a definition was consistent with engineering definitions.

■■ Both parties' positions on the meaning of the definition under these facts are logical. The PCB's agreement with the agency is both logical and reasonable. In the exceedingly technical area of pollution control, deference is due to an administrative board's interpretation of its own regulations.

■■ The district also asserts that the action of the agency and board was in violation of the equal protection clause of the United States Constitution. The first difficulty with this argument is the substantial precedent that municipal corporations are not "persons" in the context of the fourteenth amendment. (*Williams v. Mayor & City Council of Baltimore* (1933), 289 U.S. 36, 77 L. Ed. 1015, 53 S. Ct. 431; *Risty v. Chicago, Rock Island & Pacific Ry. Co.* (1926), 270 U.S. 378, 70 L. Ed. 641, 46 S. Ct. 236; *Meador v. City of Salem* (1972), 51 Ill. 2d 572, 284 N.E.2d 266.) The district argues that the rule is inapplicable because it is not challenging the actions of the legislature but an administrative agency created by the legislature. Whether the district's distinction is sustainable, we do not decide. The asserted inequality itself is totally baseless. The district charges that inequality in treatment is shown by the testimony of Thomas Wallin, a supervising engineer of the EPA. The district charges that Wallin's testimony demonstrates: (1) an inconsistency with certain "prior practices" of the EPA in approving permit applications; and (2) that the agency "would have granted" a permit to connect a new sanitary sewer to the Oak Knolls combined sewer.

As to the first contention, a review of the testimony does not find any specific past incident where permits were granted for construction of a sewer which would cause a sanitary sewer overflow. A denial of equal protection cannot be found in the inferences the district makes from Wallin's rather general and vague testimony.

■■ The district's second contention rests entirely on the engineer's supposition of how the EPA would react to an application for a hypothetical sanitary sewer connection to the Oak Knolls sewer at some

time in the undetermined future. As stated in *Queenside Hills Realty Co. v. Saxl* (1946), 328 U.S. 80, 84-85, 90 L. Ed. 1096, 1099, 66 S. Ct. 850, 852:

"But so long as that class [which is more favorably treated] is not in existence, no showing of lack of equal protection can possibly be made. For under those circumstances the burden which is on one who challenges the constitutionality of a law could not be satisfied. [Citation.] The legislature is entitled to hit the evil that exists. [Citations.] It need not take account of new and hypothetical inequalities that may come into existence as time passes or as conditions change \* \* \* [L]ack of equal protection is found in the actual existence of an invidious discrimination [citations], not in the mere possibility that there will be like or similar cases which will be treated more leniently."

Wallin's testimony reveals only the quantum of a "mere possibility." The order of the Pollution Control Board is affirmed.

Affirmed.

CRAVEN, P. J., and GREEN, J., concur.